**Bobby Joe WEILAND, Appellant,**

v.

**Robert F. PARRATT, Warden, Nebraska State Penitentiary, Appellee.**

No. 75–1515.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1976.

Decided Feb. 24, 1976.

---

**2.** As noted above, Brown contends that he has already done so. We have no record indica-

tion on this matter.

Robert F. Craig, Omaha, Neb., for appellant.

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Paul L. Douglas, Atty. Gen., Lincoln, Neb., also appeared on brief.

Before CLARK, Associate Justice,* and BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Bobby Joe Weiland, an inmate of the Nebraska State Penitentiary, appeals

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

from an order entered by the United States District Court for the District of Nebraska[1] denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

In 1970 petitioner was convicted by a jury in the District Court of Dodge County, Nebraska of the offense of breaking into and entering the Shamrock Bar in the City of Fremont, Nebraska, and was sentenced to imprisonment for a period of twelve years. On direct appeal to the Supreme Court of Nebraska petitioner's conviction was affirmed. *State v. Weiland,* 186 Neb. 325, 183 N.W.2d 244 (1971).

Thereafter, petitioner filed in the sentencing court two applications for post conviction relief as provided by the Nebraska Post Conviction Act, RSN § 29–3001 *et seq.* Both applications were denied without hearing, and in each instance the action of the sentencing court was affirmed. *State v. Weiland,* 188 Neb. 626, 198 N.W.2d 327 (1972); *State v. Weiland,* 190 Neb. 111, 206 N.W.2d 336 (1973).

State remedies having been exhausted, petitioner sought relief in the district court. He alleged that the State had knowingly made use of perjured testimony to convict him, that prosecution witnesses had intentionally injected inadmissible testimony into the trial of the case in the state court, that he had been deprived of his right to know the charge upon which he was to be tried, that the State had wrongfully refused to disclose certain information substantially in advance of trial, and that the Nebraska courts had deprived him of due process of law by refusing him an evidentiary hearing on one or both of his post conviction applications.

The district court appointed counsel to represent petitioner, and a hearing was held on February 20, 1975. Petitioner appeared by counsel, and respondent appeared by an Assistant Attorney General of the State of Nebraska. The cause was submitted to the district court on documentary evidence including a transcript of the original trial of petitioner in the District Court of Dodge County and a stipulation as to certain facts. Neither side requested an *ore tenus* hearing in connection with the petition.

Thereafter, the district court filed a memorandum opinion incorporating its findings of fact and conclusions of law and denied the petition. A motion for a new trial or for amended findings was denied. A notice of appeal was timely filed, and the district court granted a certificate of probable cause for appeal.

The district court rejected all of petitioner's contentions, and petitioner contends that the district court erred in so doing. We affirm.

The transcript of the state court trial reflects that a little after midnight on August 25, 1969 the dispatcher of the Fremont Police Department received a telephone call advising that a break-in was in progress at the Shamrock Bar. Police Officer Leo Spes and Dodge County Deputy Sheriff James Schiely proceeded to the scene in the automobile of Deputy Sheriff Schiely. They observed that the Bar had been entered and observed two persons inside. As the officers approached the building, the burglars fled, one running in one direction, and the other running in another direction. Deputy Sheriff Schiely pursued the first individual about a block and a half firing warning shots, and at the end of the chase apprehended petitioner standing or sitting in a barn or shed. The individual pursued by Officer Spes was able to escape.

Officer Spes and Deputy Sheriff Schiely formed the impression that the individual who got away was a woman, and later they identified from photographs Ms. Phyllis Croghan as the woman in question. She was charged with breaking and entering the Shamrock Bar, and a preliminary hearing in her case was held. Both officers testified at the hearing and both identified her as the second burglar.

Petitioner, who had been convicted of four prior felonies, was held in the

---

Dodge County Jail awaiting trial. On September 7, 1969 Richard L. Kuhlman, Esq., County Attorney of Dodge County, filed in the Dodge County District Court a two-count felony information against petitioner. In the first count petitioner was charged with the August 25 break-in at the Shamrock Bar. In the second count petitioner's prior criminal record was detailed, and he was charged as an habitual criminal.

Petitioner was held in jail until his trial which took place on February 24, 1970. In the meantime, Ronald Leffel had been placed in the jail around October 28, 1969 on a charge of possession of a forged instrument. It seems that Leffel had been arrested originally in Texas on a car theft charge, which was not pressed, and later had been returned to Nebraska. In a conversation with officers that took place in the Fremont Police Station in December, 1969, Leffel stated that he and petitioner had been the two people who broke into the Shamrock Bar the preceding August. Leffel also admitted that he had engaged in other break-ins or attempted break-ins in Fremont. Leffel's statements appear to have been corroborated by the results of a polygraph test administered by Detective Gerhard Petersen of the Fremont Police Department.

Naturally, the question arose as to whether Leffel would be willing to testify against petitioner who had a much worse criminal record than did Leffel. And equally naturally the question arose as to whether Leffel would be extended leniency or immunity if he testified against petitioner, and that question concededly was discussed.

On the day before the trial Leffel had conversations in the jail with County Attorney Kuhlman and Deputy County Attorney Vrana. Apparently, in the course of those conversations Leffel agreed definitely that he would take the stand against petitioner. On the same day the prosecuting officials sought leave to include the name of Leffel as a State witness; leave was obtained, and Leffel's name was endorsed in handwriting on the information about an hour before the trial began.

On the evening before the trial two other persons, Bill Schnoor and William R. McPhail, were confined in the jail. Schnoor was being held on a charge of driving a car without a license, and McPhail was being held for deportation to Canada. On the following day they testified as defense witnesses as to a conversation that they claimed to have had with Leffel the preceding evening relating to his appearance as a witness.

The trial was held as scheduled, and the principal witnesses for the State were Leffel, Detective Petersen, Officer Spes and Deputy Sheriff Schiely. The defendant testified in his own behalf and called five witnesses, including Schnoor and McPhail.

As might be expected, the testimony elicited at the trial was in sharp conflict. Leffel testified positively that he and petitioner had broken into the Shamrock Bar and had fled therefrom when the officers appeared on the scene. He made no reference to a woman being involved in the case in any way, and he stated that he was the individual who escaped. Deputy Sheriff Schiely insisted on the stand that the man whom he chased from the Bar and eventually caught was the petitioner. Petitioner, testifying in his own behalf, emphatically denied that he had had anything to do with the break-in.

Petitioner also testified that after he was arrested and as he was being taken to the police station, the officers ran over something; that when he got to the station he was put in a cell and went to sleep, and that he was awakened by an officer who told him that Phyllis Croghan had been shot and was bleeding, and that later he was questioned by Detective Petersen about Ms. Croghan and was told that he was being charged with first degree murder.

The State's witnesses were vigorously cross examined by defense counsel, and were obviously impeached seriously although the jury ultimately accepted the State's version of the case and convicted

the petitioner. Officer Spes and Deputy Sheriff Schiely naturally had to admit that they were wrong in their initial identification of Ms. Croghan; Schiely admitted that the man he chased was out of his sight for a second or two before he located petitioner. Leffel, of course, admitted his own participation in the break-in at the Shamrock Bar; he also admitted a prior felony conviction and his commission of additional offenses. He further admitted that he had discussed leniency or immunity with the police, although he insisted that no promise had been made to him in exchange for his testimony. Detective Petersen admitted that he had discussed leniency with Leffel, and that while he had made Leffel no promises, Leffel may have gained the impression that if he testified truthfully consideration might be shown him.

Jail inmates Schnoor and McPhail testified that on the evening of February 23, 1970 Leffel told them in the jail that he had been promised immunity if he testified against petitioner and had been told that if he refused to testify he would be prosecuted as an habitual criminal to the fullest limits of the law.

In the course of the trial two references to the polygraph test taken by Leffel were made. On cross examination Petersen stated that he had recommended that charges against Ms. Croghan be dismissed after he had talked with Leffel and had "taken him on the polygraph." While Schiely was being cross examined, he was asked what caused him to change his mind about the identity of the person who escaped from the scene of the break-in; he replied that he changed his mind after considering Leffel's statements "along with the polygraph tests he took." Defense counsel made no objection to the reference to the polygraph test when Petersen mentioned it, but immediately after Schiely testified defense counsel moved for a mistrial on the basis of both references. Counsel did not ask that the references be stricken from the record or that any cautionary instruction be given to the jury.

In the instant case counsel stipulated that after petitioner's conviction Leffel was granted complete immunity and was released from custody.

■ We first consider petitioner's claim that Nebraska deprived him of due process of law when it failed to grant him an evidentiary hearing in connection with his post conviction applications. A state has no constitutional duty to provide post conviction remedies or hearings, and the only effect of a state's failure to do so is to enable a person convicted in the state courts to bring his federal constitutional claims directly to the federal courts as petitioner has done. And the defendant has had the benefit of the district court's independent evaluation of his claims.

The testimonial references to the polygraph test taken by Leffel were considered by the Supreme Court of Nebraska in connection with petitioner's direct appeal. That court decided that any objection to the reference made by Detective Petersen had been waived, and that the reference by Deputy Sheriff Schiely was responsive to the question put to him and was invited by defense counsel who "must have known that the polygraph statement was an element which the witness considered in reaching the conclusion he did." *State v. Weiland, supra,* 183 N.W.2d at 246.

■ The district court dealt with the reference to the polygraph test as follows:

* * * While these references would ordinarily be inadmissible (no motion to strike was ever made, although following the second witness' testimony a motion for mistrial was made and overruled), it is arguable that they were responsive, and it is far from clear that they were intentionally made or that the plaintiff suffered any prejudice as a result. If the failure to strike this testimony was indeed error, it was not one of constitutional proportions.

We agree. Moreover, we find from the trial record that in its Instruction No.

13–A the state trial court told the jury specifically that the results of a polygraph examination are not admissible in evidence, and that the jury should disregard any reference to the test administered to Leffel and should not speculate on the result of the test.

■ Petitioner complains principally that the State knowingly used perjured testimony to secure his conviction. The claim centers around the testimony of Leffel, Petersen, Spes and Schiely and largely hinges upon petitioner's contention that Leffel had been promised immunity in exchange for his testimony. The issue presented to the district court was factual, and we must accept the district court's findings unless satisfied that they were clearly erroneous. *See* Fed.R. Civ.P. 52(a); *Leasure v. Lockhart,* 509 F.2d 23 (8th Cir. 1975); *Brown v. Swenson,* 487 F.2d 1236 (8th Cir. 1973), *cert. denied,* 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974).

■ The question before the district court was not whether a particular witness or set of witnesses had testified falsely at petitioner's trial but whether the State had made a knowing use of perjured testimony to obtain petitioner's conviction. And it appears to us from the district court's memorandum opinion that it found ultimately that petitioner had failed to discharge his burden of proof.

The district court seems to have given no weight to the testimony of Schnoor and McPhail about Leffel's statements to them, which statements were hearsay as far as the State was concerned. The court found that the only basis for a finding that a promise of immunity had been made to Leffel was the ultimate treatment that he received, and the court was unwilling to infer from that treatment that any prior promise of immunity or leniency had been made. As to the testimony of Spes and Schiely, it appeared to the district court that they had simply been mistaken in their original identification of Ms. Croghan as the individual who escaped, and had repudiated that identification at petitioner's

trial. It should be noted that neither Spes nor Schiely purported at that trial to identify Leffel as the person who got away.

We cannot say that the district court's rejection of petitioner's claim of knowing use of perjured testimony does not have substantial evidentiary support in the record or that it is clearly erroneous.

There remains for consideration the claim that the alleged tardiness of the State's disclosure that Leffel would be called as a prosecution witness and would testify against petitioner as an accomplice to the crime deprived petitioner of due process of law.

■ The claim has two aspects. The first is that the State's "substitution" of Leffel for Ms. Croghan deprived petitioner of his right to know the nature of the charge against him. That aspect of the claim is not impressive. Petitioner and his attorney knew that the former was charged with breaking into the Shamrock Bar on August 25, 1969; it made no legal difference whether he broke into it alone or whether he broke into it in company of Leffel. Petitioner knew whether he had broken into the Bar; he knew whether he had an accomplice, and, if so, he knew who the accomplice was.

■ The second aspect is that the expected testimony of Leffel was "exculpatory" as far as petitioner was concerned in the indirect sense that it would adversely affect the credibility of the original investigating officers and would also militate against the credibility of Leffel himself if it could be established that he had been promised immunity in exchange for his testimony, and that the State owed petitioner a constitutional duty to make a timely disclosure of the fact that Leffel would testify and of the substance of his testimony. Petitioner relies on cases like *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

This aspect of the claim might be disposed of properly by saying that it was

competently and intelligently waived in the original proceedings in the District Court of Dodge County and should not be considered in this federal habeas corpus proceeding. The state court record does not indicate that petitioner made any objection when the name of Leffel was added to the State's list of witnesses, or that petitioner moved for a continuance, or that he objected to Leffel taking the stand. The matter was not mentioned in the motion for a new trial filed immediately after petitioner's conviction; nor was the question raised in connection with the original appeal or in connection with petitioner's first application for post conviction relief. It was first brought up in connection with petitioner's second application for post conviction relief, and the Nebraska courts refused to consider it. It is at least arguable that petitioner and his trial attorney did not think at the time that the late disclosure about Leffel was important, that petitioner did not think so when he filed his first application for post conviction relief, and that his injection of the question into his second post conviction application was simply an afterthought on his part.

However, respondent does not argue that the question now under consideration is not properly before us. Counsel for respondent simply contends that there is no merit to petitioner's contention, and we prefer to dispose of the question on that ground.

Granting petitioner's premise that a prosecutor is required to make timely disclosure of evidence favorable to the defendant and of facts, including promises or inducements, which would adversely affect the credibility of witnesses whom the State plans to call at the trial, we fail to see how petitioner was prejudiced in his defense by the fact that he did not know until shortly before trial (if such was actually the case) that Leffel would testify for the State, would judicially admit his participation in the Shamrock Bar break-in and would identify petitioner as his companion in crime. To put it another way, we do not see that it would have done petitioner any legitimate good had he and his attorney had the information in question several days or several weeks before the trial.

As far as petitioner was concerned, the testimony of Leffel was not "exculpatory" in the conventional sense of the term, and was beneficial to petitioner only in the indirect sense that has been indicated. And we are satisfied that defense counsel by his cross examination extracted from Leffel and other affected witnesses all of the benefit that was to be derived from Leffel's own status in the case and from the fact that the testimony given by Spes and Schiely at the trial was radically different from that which they had given at the preliminary hearing of Ms. Croghan. Additionally, the defendant had the benefit, for whatever it was worth in the eyes of the jury, of the testimony of Schnoor and McPhail.

Presumably, the jury was made up of people of judgment and common sense. They knew that the officers had changed their story; they knew that Leffel was an accomplice in the Shamrock Bar break-in and that he was potentially faced with other criminal charges, and they knew that he had discussed leniency or immunity with representatives of the State, and they must have known that Leffel at least hoped for some consideration on account of his testimony.

As to Leffel's status as an accomplice, the record reflects that the trial court instructed the jury that Leffel's testimony should be closely scrutinized for any possible motives for falsification, and that if the jury found that Leffel had testified falsely as to any material matter, it should be hesitant to convict petitioner on Leffel's testimony unless corroborated, and that in no event should petitioner be found guilty unless the jury was convinced of his guilt beyond a reasonable doubt.

Petitioner's argument that the State should have disclosed that Leffel had been promised leniency or immunity in exchange for his testimony assumes that there was such a promise, and, as has been seen, petitioner failed to establish the existence of the alleged promise.

Affirmed.