Melvin **MARTIN**, Petitioner,

v.

Robert **PARRATT**, Warden, Nebraska Penal Complex, Respondent.

Civ. No. 73-L-265.

United States District Court, D. Nebraska.

May 6, 1976.

Fredric H. Kauffman, Lincoln, Neb., for petitioner.

Bernard Packett, Asst. Atty. Gen., State of Neb., for respondent.

## MEMORANDUM

DENNEY, District Judge.

This habeas corpus matter comes before the Court pursuant to 28 U.S.C. § 2254 subsequent to an evidentiary hearing and the submission of the State court record.[1] In accordance with Rule 52, F.R.Civ.P., the Court makes the following findings of fact and conclusions of law.

Petitioner, Melvin Martin, an inmate at the Nebraska Penal and Correctional Complex, was charged in the District Court of Adams County, Nebraska, with the offense of receiving stolen copper of the value of more than $100 and with being an habitual criminal. A jury found him guilty on August 1, 1972, and petitioner was sentenced to 17 years imprisonment as an habitual criminal. Petitioner appealed his conviction to the Supreme Court of Nebraska, which affirmed the lower court. *State v. Martin,* 190 Neb. 212, 206 N.W.2d 856 (1973).

Petitioner now seeks a writ of habeas corpus from this Court upon two grounds: (1) Prosecutorial suppression of favorable evidence; and (2) Unconstitutionality of the Nebraska habitual criminal statute.[2]

The transcript of the State court trial reflects that petitioner was originally charged in a two-count information. Count 1 charged the commission of the offense of burglary and Count 2 charged the offense of receiving stolen property and with being an habitual criminal. Martin was brought before the County Court of Adams County on March 3, 1972. Counsel was appointed and a preliminary hearing was held on March 29, 1972. Following the preliminary hearing, Count 1 was dismissed and Martin was bound over for trial. Although bond was set for Martin at $10,000.00, he remained in custody until his trial.

The prosecution's main witness was Ned Nelson, Martin's alleged accomplice. Nelson's testimony, which was denied by Martin, may be briefly summarized as follows.

---

1. Petitioner instituted this action on October 4, 1973. The inordinate delay in this case was at the request of petitioner. Petitioner sought to conduct extensive discovery and further requested in open Court that final decision be deferred pending resolution of a similar case, *Brown v. Wolff,* Civ. No. 74–L–36, (D.Neb. 1974). Petitioner's counsel withdrew this request on April 12, 1976.

2. Petitioner also alleges in his petition that he was deprived of his sixth amendment right to counsel for the reason that the records of prior convictions used in sustaining the count of habitual criminality do not show on their face that counsel was present or waived. This point was neither argued nor briefed before this Court or the State courts. Petitioner's prior convictions occurred in the years 1938, 1941, 1947 and 1950, long before the Supreme Court ruled that the right to counsel was guaranteed by the sixth and fourteenth amendments. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

On or about February 13, 1972, Nelson and Martin went to the Naval Ammunition Depot and found three or four tons of copper with large quantities of iron pipe and cinder block, located in a gutted building. They placed the copper away from the wall and departed without the copper during the early morning because of daylight and nearby factories. The two men returned about 10:45 P.M. with hammers, chisels and axes, stripped 1100 pounds of copper and transported it to the Glenville dump, where they unloaded it. The next morning, the men returned to the dump, loaded the copper, and transported it to Council Bluffs, Iowa, where it was sold to a scrap metal dealer for $400.00.

Martin disputed Nelson's testimony and testified that he did not participate in the original taking of the copper and was unaware that it was stolen.

## SUPPRESSION OF FAVORABLE EVIDENCE

Petitioner bases his claim of suppression of favorable evidence upon the alleged failure of the State to disclose that Nelson had been promised immunity in exchange for his testimony. Petitioner relies on *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

The State initially argues that Martin should be required to first exhaust his State remedies upon this issue, for the reason that this claim was not adjudicated by the Supreme Court of Nebraska. Martin raised this ground in his petition for habeas corpus and respondent's answer alleged that petitioner had raised all grounds being asserted before the Supreme Court of Nebraska. Respondent did not raise the exhaustion argument until the evidentiary hearing before this Court on October 30, 1975.

■ The exhaustion doctrine should not be applied inflexibly. *Rice v. Wolff,* 513 F.2d 1280, 1289–1291 (8th Cir.), *cert. granted* 422 U.S. 1055, 95 S.Ct. 2677, 45 L.Ed.2d 707 (1975). The exhaustion of State remedies is not measured by the language of the court's opinion, but by the record before the reviewing court. Petitioner argued in his brief before the Supreme Court that it is inferable that Ned Nelson was made promises by the County Attorney for favorable testimony. The Court, therefore, concludes that Martin effectively presented this issue to the Nebraska courts.

■ Upon the merits of petitioner's claim, Martin has failed to prove any promises of immunity. Nelson testified before this Court that he conferred once with the County Attorney prior to Martin's trial and there was no discussion of his pending charges. Nelson repeatedly denied that a deal had been made, and stated that he wasn't prosecuted because there was a "shake-up" after the elections in the office of the County Attorney.

William Connolly, the County Attorney who prosecuted Martin, corroborated Nelson's denial of immunity. Connolly testified that he diligently prosecuted Martin first because, of the two defendants, he preferred to obtain a conviction of Martin whom he considered the more culpable participant.

Petitioner argues that there exists two bases for a finding that a promise of immunity had been made to Nelson. One is the fact that the charges against him were eventually dismissed. The second basis is that on three occasions Nelson worked for the County Attorney of Adams County and law enforcement officials as an informer in narcotic cases, and testified in one of the cases. Nelson never received payment for his services and following his testimony against Martin he performed no other services for the Adams County law enforcement officials.[3]

The Court is unwilling to infer from these facts and Nelson's ultimate treatment

---

**3.** Although petitioner argues that the prosecution failed to inform the Court or Martin's counsel that Nelson was working as an informer in narcotic cases, the identity of informers is confidential and the release of this information may have endangered Nelson.

that any prior promises of immunity or leniency had been made. *See Weiland v. Parratt*, 530 F.2d 1284 (1976). Nelson testified on cross-examination as follows:

Q. Did anyone tell you that it would be to your advantage to cooperate and testify here?

A. No, sir.

Q. Then why are you testifying, if I may ask?

A. Well, for a variety of reasons. It is sort of nice to be married again and settled down, and it goes back sort of a long ways, you might say. You take anybody that does not work for a great length of time and yet always has money has to get it some way, and nine out of ten times it is not legal. When I worked for Endco Manufacturing Company, I had my wife down there harassing me, and harassing the company. We had a lot of complaints about trailers being sabotaged, and I have had my own cars sabotaged, and when you come back with the convertible top sliced off or the seats sliced and after a while something has to be done, and the law enforcement people can only do so much, and I have had a great—I have had a great many ideas where all of this has come from. I have had people sitting in the shop after hours on twenty-four hour shifts notice that there has been strange green '59 Buicks driving by, and after a fashion, you get some things that disappear, and after this sort of thing, it gets a guy's goat. (Bill of Exceptions 46:23–47.21).

Connolly credibly explained the reason that he prosecuted Martin first and Nelson's explanation of why his charges were eventually dismissed by the new County Attorney is also credible. The Court cannot properly infer promises of immunity or leniency from defendant's participation as an informer for the Adams County Attorney. It is equally plausible that Nelson's actions were motivated by repentance or perhaps self-interest, in the hope that leniency might emanate from his cooperation with the prosecution in this case and others.

Petitioner asserts that the prosecutor not only suppressed the promise of immunity but intentionally elicited perjured testimony. Nelson testified on direct examination by the State as follows:

Q. Or have you been charged with a crime along with Mr. Martin in this case?

A. Yes.

Q. And you have plead (sic) guilty, is that correct?

A. Yes.

Q. Have you been sentenced at this time?

A. No.

(Bill of Exceptions 22:17–23).

This testimony is repeated at the close of direct examination:

Q. And you were charged, is that correct?

A. Uh-huh.

Q. And you plead (sic) guilty?

A. Yes.

Nelson's testimony elicited at the evidentiary hearing before this Court proved that he had not in fact pleaded guilty to the pending charges, but had waived his right to a preliminary hearing. In response to questioning by the Court, Nelson explained that at the time he thought he had pleaded guilty. Petitioner did not offer any proof that the prosecution knew the testimony was false. *See Holt v. United States*, 303 F. 2d 791 (8th Cir. 1962), *cert. denied*, 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132. Furthermore, the Court finds that any prejudice which Martin may have suffered was cured by the testimony of Nelson upon cross-examination as follows:

Q. And have you plead (sic) guilty to both counts?

A. Yes, sir.

Q. Was that plea in County Court or in the District Court?

A. I presume County. I am just not too sure now.

Q. Were you before Judge Irons or Judge Chatterton or were you before Judge Haverly?

A. Judge Haverly.

Q. Did they inform you that that was your preliminary hearing?

A. Yes.

Q. So what you did then, you did not plead guilty, you just merely waived your preliminary hearing? Is that correct?

A. Yes, sir.

(Bill of Exceptions 45:20–46:12).

█ The credibility of witnesses is a question for the jury. The Court properly instructed the jury that "[the testimony of a claimed accomplice] should be closely scrutinized for any possible motives for falsification, and if you find that he has testified falsely in regard to any material matter, you should be hesitant to convict upon his testimony without corroboration . . . ." [Instruction No. 8]. Presumably, "the jury was made up of people of judgment and common sense" and they must have known that Nelson at least hoped for some consideration of leniency on account of his testimony. *Weiland v. Parratt*, 530 F.2d at 1290.

## HABITUAL CRIMINAL STATUTE

The basis for charging a defendant under the Nebraska habitual criminal statute is two prior convictions resulting in a conviction and sentence to prison for terms of not less than one year each. Upon conviction of a third felony, the defendant is deemed an habitual criminal and subject to a mandatorily enhanced sentence of ten to sixty years. Neb.Rev.Stat. § 29–2221 (Cum.Supp. 1974). Although the bringing of an habitual criminal charge, except in rare circumstances, is the factual equivalent of a conviction, the system is not automatic. The prosecutor must first file a supplementary information and this decision is fully within the discretion of the prosecutor.

█ Despite challenges to habitual criminal statutes, the courts have always upheld their constitutionality. *See Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1966); *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *Graham v. West Virginia,* 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); *McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); *Moore v. Missouri,* 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895). Petitioner attempts to distinguish the holdings in these and other cases by urging upon the Court a distinction overlooked by past challenges—recidivist laws are not criminal laws but are sentencing laws.

Petitioner argues that sentencing power must be vested in the judge and jury, not in a prosecuting attorney. *Berra v. United States,* 351 U.S. 131, 139, 76 S.Ct. 685, 690, 100 L.Ed. 1013, 1020 (Black J., dissenting):

A judge and jury act under procedural rules carefully prescribed to protect the liberty of the individual. Their judgments and verdicts are reached after a public trial in which a defendant has the right to be represented by an attorney. No such protections are thrown around decisions by a prosecuting attorney. *Id.* at 140, 76 S.Ct. at 691, 100 L.Ed. at 1021.

Petitioner attacks the habitual criminal statute upon due process grounds, asserting that it improperly allows the prosecutor to control sentencing without sufficient guidelines or adequate procedural safeguards. In spite of this novel and ingenious argument, petitioner's premise is erroneous.

Nebraska's habitual criminal statute is mandatory in its terms, not discretionary:

Whoever has been twice convicted of crime, sentenced and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than one year, *shall,* upon conviction of a felony committed in this state, be deemed to be an habitual criminal. . . . Neb. Rev.Stat. § 29–2221 (Cum.Supp.1974). [Emphasis supplied].

It would therefore appear that the decision to enhance punishment of a recidivist is

the determination of the legislature, not the prosecutor. However, in *State v. Martin, supra,* the Supreme Court of Nebraska held that "[t]he prosecutor possesses a discretion whether to charge the facts referable to habitual criminality . . . ." 206 N.W.2d at 858. The Nebraska court apparently so held on the basis of the discretion historically vested in the prosecution as to whether or not to file any charges at all.

Although the court's interpretation is binding upon this Court, the discretion of the prosecutor in Nebraska is not unbridled or without review, despite petitioner's assertions to the contrary. Neb.Rev.Stat. § 29–1606 (1964) provides in relevant part as follows:

It shall be the duty of the county attorney of the proper county to inquire into and make full examination of all the facts and circumstances connected with any case on preliminary examination . . . . If the prosecuting attorney shall determine in any such case that an information ought not to be filed, he shall make, subscribe, and file with the clerk of the court a statement in writing, containing his reasons, in fact and in law, for not filing an information in such case; . . . ; *Provided,* in such case such court may examine the statement, together with the evidence filed in the case, and if, upon such examination, the court shall not be satisfied with the statement, the county attorney shall be directed by the court to file the proper information and bring the case to trial.

Moreover, petitioner's attempt to invoke the due process clause of the fourteenth amendment is misplaced. The guaranty of a hearing found in the due process clause has traditionally been limited to judicial and quasi-judicial proceedings. *Cox v. United States,* 473 F.2d 334 (4th Cir.), *cert. denied* 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973). Therefore, the proper question is whether the state legislature might reasonably vest in the prosecutor rather than in a judge the responsibility of deciding whether or not to enhance the sentence of a recidivist. This Court's inquiry in the context of habeas corpus proceedings is whether the statute is repugnant to the Constitution of the United States. The balance of powers embodied in our federal government is not one of the protections of the Bill of Rights applicable to the states. It is fundamental that state governments may be formed without regard to the tripartite form of government recognized under the Federal Constitution. *Sweezy v. New Hampshire,* 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957).

Originally, petitioner sought to attack the statute upon grounds of unconstitutional application. Although this claim was subsequently abandoned, the Court feels constitutionally bound to comment upon the merits of an "as applied" attack in this habeas corpus proceeding.

Petitioner requested respondent to admit that between January 1, 1970 and January 1, 1975, forty-six men were sentenced to incarceration at the Nebraska Penal and Correctional Complex by the District Court of Adams County, Nebraska; that of these forty-six men, ten men were "habitual criminals," under the Nebraska definition; that of these ten men only one man, petitioner, was charged, convicted, and sentenced as an habitual criminal [Filing # 22]. Furthermore, County Attorney Connolly testified that although he could have used the habitual criminal statute often, he used it only once to its conclusion.

Although the Court recognizes that county attorneys have exercised selectivity when applying Nebraska's habitual criminal statute,

the conscious exercise of some selectivity is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Oyler v. Boles,* 368 U.S. at 456, 82 S.Ct. at 506, 7 L.Ed.2d at 453.

Finally, petitioner, relying upon *Robinson v. California,* 370 U.S. 660, 82

S.Ct. 1417, 8 L.Ed.2d 758 (1962), argues that the habitual criminal statute constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments because it punishes a status, rather than an act. The argument ignores the fact that the habitual criminal statute is a sentencing statute imposed upon the conviction of a third felony. The police power justifies increased sentences imposed on persons dangerous to society, and the requirement of a third felony is a recent overt act which distinguishes the problem of "status" confronting the Supreme Court in *Robinson v. California, supra.*

An Order is filed contemporaneously herewith in accordance with this Memorandum.