STATE of Missouri, Respondent,

v.

Roy Lee KERR, Appellant.

No. KCD 27292.

Missouri Court of Appeals,
Kansas City District.

Nov. 3, 1975.

Motion for Rehearing and/or Transfer
Denied Dec. 8, 1975.

Application for Rehearing Denied
Feb. 9, 1976.

Howard L. McFadden, Public Defender, Richard R. Nacy, Jr., Asst. Public Defender, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Roy Lee Kerr was convicted by a jury of murder, first degree, and his punishment was assessed at life imprisonment. Sentence and judgment were rendered accordingly. §§ 559.010, 559.030, RSMo 1969, V.A.M.S.

Appellant does not question the sufficiency of evidence to sustain his conviction, and a jury reasonably could find a case of murder, first degree, from the following facts in evidence:

On November 9, 1972, Carlos W. Rollins, night auditor at Holiday Inn (South), Jefferson City, Cole County, Missouri, was found shot to death near a safe in an office behind the registration desk. The shooting occurred between 3 a. m., when Mr. Rollins was seen alive by Wallace Doty, and 5:50 a. m., when he was discovered by day-shift employees Pauline Kay and Steven Thomas. The area of the registration desk and rear office did not appear to have been ransacked, and there were no signs of a struggle. Lock box No. 11 had been opened with a key normally kept in the cash register at the registration desk. $500 was missing from the lock box and some change was missing from the cash register.

Roy Lee Kerr and Diane Hughes were married March 18, 1961, and were divorced July 5, 1973. In September, 1972, Roy Lee Kerr was living with Cathy Holm at Saint Martins near Jefferson City until she discovered he was already married and left him to return to her home in Addison, Illinois.

In September, 1972, Roy Lee Kerr, under the assumed name of Kenneth Holm, was employed by Holiday Inn as night auditor, the same position held by Mr. Rollins at the time he was killed. His employment began on September 5 or 6, 1972, and he worked a total of thirty-two hours, after which he left and did not return. During the time of his employment he learned the business procedures of the job, including knowledge that lock box No. 11 always contained a minimum of $500 and that its key was kept in the cash register. He learned also that the night auditor, whose duty ran from 11 p. m. to 7 a. m., was the only employee at the Inn from 1 a. m. until 6 a. m. Sometime in October, 1972, Roy Lee Kerr solicited information from Anita Mortimer, evening clerk at the Inn, that a night auditor had not yet been hired to replace him. Carlos Rollins began his employment as night auditor on the last day of October or in the first week of November, 1972.

In October, 1972, Emmett Ray Hughes, brother-in-law of Roy Lee Kerr, owned a gold-plated, .22 caliber Sturm Ruger revolver, equipped with walnut grips. The gun, Exhibit 12, was stolen sometime in October, 1972, and the theft was reported to the police. Roy Lee Kerr knew the gun was in the Hughes home and had fired it on prior occasion.

Carol Cook served Roy Lee Kerr dinner at Warwick Village dining room in Jefferson City at 5 p. m., November 8, 1972. He had eaten there for four or five weeks previously.

Investigation commenced immediately after the crime on November 9, 1972. Employment records at Holiday Inn were examined to ascertain employees who knew business procedures followed by the night auditor. The investigation focused on the application and employment of Kenneth Holm; the Inn manager had noted "strange" on his application. As the investigation progressed, Diane Kerr, after hearing a 6 p. m. news broadcast concerning the murder and robbery, voluntarily came to the police station and informed police that Roy Lee Kerr was the person who applied for the job at Holiday Inn as Kenneth Holm, that he also had worked at Chese-

brough-Ponds, Inc. in Jefferson City under an assumed name, and that he had probably committed the robbery and murder. Signatures on employment applications at Holiday Inn and Chesebrough-Ponds were compared with the signature of Roy Lee Kerr on a guest registration card at Holiday Inn (Downtown) and they were determined to have been executed by the same person.

An autopsy was performed on the victim and a .22 caliber bullet was recovered from his skull. The bullet caused the victim's death and it had been fired from Exhibit 12.

Jerome Dolan, an officer in the Addison, Illinois, police department, had been given by Kenneth Holm as a reference on his employment application. Communications between Jefferson City officers, Officer Dolan, and other Addison officers informed that Roy Lee Kerr was suspected of robbery and murder. Replies by teletype contained data on Kerr's activities in Addison, Illinois, including Cathy Holm's present residence in Addison and Kerr's attempts to visit her there. Such communications also included a report that Diane Kerr had informed Cathy Holm that Kerr had stolen a .22 caliber revolver from her relative several weeks before the robbery.

On November 10, 1972, the Prosecuting Attorney of Cole County, acting on information gathered by police investigation, executed a complaint on his oath alleging that Roy Lee Kerr murdered and robbed Carlos W. Rollins, and an arrest warrant on that complaint was issued by the magistrate court. On November 13, 1972, the Addison police were informed by teletype and telephone that the warrant had been issued for the arrest of Roy Lee Kerr. Later in the day Addison officers arrested Roy Lee Kerr when he went to the Holm residence. Upon arrest, Kerr was searched and Exhibit 12, in loaded condition, was found concealed in his waistband. The gun, together with its load, a spent .22 caliber cartridge, some .22 caliber ammunition, and some money also found on his person, were seized for preservation as evidence by the officers.

Roy Lee Kerr was identified by employees of Holiday Inn as being one and the same as Kenneth Holm.

Appellant contends (I) that the court lacked jurisdiction "because the indictment omitted an essential element of the charge, i. e., that a wound was inflicted on the victim by the defendant's gun."

█ Rule 24.01, V.A.M.R., provides that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." It is jurisdictional in that if it fails to charge a crime the court acquires no jurisdiction to proceed; and an essential element in a charge of murder is that the accused inflicted a wound from which the victim died. · State v. Brooks, 507 S.W.2d 375, 376 (Mo.1974). See also State v. Green, 111 Mo. 585, 20 S.W. 304 (1892); State v. Blan, 69 Mo. 317 (1879); 40 Am.Jur.2d, Homicide, § 230.

The indictment charged that Roy Lee Kerr "did willfully, unlawfully, feloniously, premeditatedly, deliberately, and of his malice aforethought make an assault upon one Carlos W. Rollins with a loaded .22 caliber revolver, and then and there feloniously, willfully, unlawfully, premeditatedly, deliberately, and of his malice aforethought did discharge and *shoot* said .22 caliber revolver at and *upon the body* of Carlos W. Rollins, *from which said mortal wound Carlos W. Rollins did die* \* \* \*."

█ The emphasized portion of the indictment is a sufficient statement that the victim sustained a mortal wound inflicted by accused's gunshot, in that it states that the accused did "shoot \* \* \* upon" the victim. It is inartful and archaic, but nevertheless it means that accused's shooting resulted in actual physical contact with and wounding of the victim. See State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245, 251 (1938); and compare State v. Brooks, supra, where there was no allegation in any sense that the accused inflicted a wound on the victim from which he died.

Appellant charges the court erred (II) in admitting in evidence the gun and other articles seized from appellant without a search warrant, without a valid arrest warrant, and not in connection with a lawful arrest, in violation of his rights under United States Constitution, Amendment IV, and Missouri Constitution, Article I, Section 15.

Appellant notes the absence of a search warrant and of an Illinois arrest warrant (see 4 Am.Jur.2d, Arrest, § 20); and argues that the Missouri arrest warrant was invalid because "the complaint stated none of the operative facts as the basis for probable cause for issuance of an arrest warrant" (see *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958)); and because the magistrate made no inquiry into the matters recited in the complaint (see *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)). Appellant asserts also that the complaint was not under oath, but the record is to the contrary.

It is not necessary to determine whether the formal complaint and warrant meet the requirements of the foregoing authorities because the dispositive question is, as posed by appellant, whether the seizure was justified as an incident to a lawful arrest without warrant made upon probable cause.

Case law has established that when a law enforcement agency or officer requests another such agency or officer to arrest a suspect on a particular charge, the arresting agency or officer then has probable cause to sustain the validity of the arrest; that validity of the arrest is determined by existence of probable cause for the arrest in the demanding authority, and invalidity of an existing arrest warrant does not render an arrest invalid when the arresting and demanding authorities otherwise have probable cause for the arrest. *State v. Owens*, 486 S.W.2d 462 (Mo.1972); *State v. Ford*, 495 S.W.2d 408 (Mo. banc 1973); and *Young v. United States*, 344 F.2d 1006 (8th Cir. 1965), recognize that an arresting officer need not have personal knowledge of the facts constituting probable cause in order to make a valid arrest upon the request of one who possesses probable cause. *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Dearinger v. United States*, 378 F.2d 346 (9th Cir. 1967); *State v. Stuart*, 456 S.W.2d 19 (Mo. banc 1970) (reversed on other grounds); and *Whiteley v. Warden*, supra, recognize that an arrest, although backed by an invalid warrant, is a lawful arrest if the demanding authority had probable cause for the arrest.

Thus, the arrest of Roy Lee Kerr does not depend on personal knowledge of Illinois arresting officers of the facts constituting probable cause, nor on validity of the Missouri arrest warrant. The question then is whether the demanding officer in Missouri had probable cause to arrest defendant or to have him arrested by the Illinois officers. The test is whether the information possessed by the Missouri officers was sufficient to warrant a man of reasonable caution in believing that an offense had been committed, and whether the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the accused had committed an offense. *State v. Maxwell*, 502 S.W.2d 382, 386[1] (Mo.App.1973).

Within the scope of the foregoing test, and under the authorities cited, Missouri officers, at the time of their demand for the arrest of Roy Lee Kerr by Illinois officers, reasonably knew: that Carlos Rollins had been shot to death; that at least $500 in his custody at Holiday Inn was missing; that Roy Lee Kerr had been living in Jefferson City, working under assumed names, one of which was Kenneth Holm; that as Kenneth Holm he worked at Holiday Inn for 32 hours in September, 1972, and learned the procedures for handling money in the job held by Carlos Rollins at the time of his death; that there was no evidence of ransacking or struggle in the

office where the crimes were committed; that the lock box had been unlocked by a key ordinarily kept in the desk cash register; that Carlos Rollins was killed by a .22 caliber bullet; that a .22 caliber pistol had been stolen from the home of Kerr's brother-in-law in October, 1972; that, according to the Illinois police, Diane Kerr had informed Cathy Holm that Kerr had stolen the gun some weeks prior to the crime; that Diane Kerr had told the police that Roy Lee Kerr and Kenneth Holm were one and the same and that he probably had committed the robbery and murder. Such knowledge constituted probable cause for the arrest of Roy Lee Kerr; the search of his person was properly conducted as an incident of that arrest, and the items seized became admissible in evidence against him.

■ Appellant argues also under Point II that the arrest and search were invalid because they were based on information supplied by his wife. Intertwined with this argument is appellant's contention (III) that the court erred in refusing to suppress evidence obtained through information supplied by his wife. Appellant asserts that use of information gained from Diane Kerr violated the rule that a wife is incompetent to execute a complaint for an arrest warrant against her husband except where she is the victim of her husband's crime (see *Ex parte Dickinson,* 132 S.W.2d 243 (Mo.App. 1939)), and the rule that a woman cannot testify against her husband with respect to any admission or confidential communications of her husband (see Sections 491.020 and 546.260, RSMo 1969, V.A.M.S.); and that all evidence which flowed from information supplied by Mrs. Kerr should have been excluded as "fruit of the poisonous tree" (see *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

■ Insofar as this record shows, Diane Kerr went to the police of her own volition and without solicitation informed the police that Roy Lee Kerr and Kenneth Holm were one and the same and that she believed he committed the murder and robbery at Holiday Inn. The difficulties in appellant's position are thus obvious. There is no evidence that the information given by Mrs. Kerr came from any confidential communication between her and her husband, *Allen v. Allen,* 60 S.W.2d 709, 711 (Mo.App.1933); Sections 491.020 and 546.-260, supra, provide only for a testimonial privilege; and it does not appear to be illegal for a spouse to speak to or "tip" law enforcement authorities even where confidential communications may be involved. Consequently, there is no illegality upon which to found the "fruit of the poisonous tree" argument.

Appellant charges the court erred (IV) in failing to grant a mistrial when State's witness Cathy Holm volunteered that she left defendant, with whom she had been living, after she found he was still married.

The incident in question arose as follows:

"Q [By Mr. Brydon for the State] You say you were living in St. Martins, Missouri. Who was living there? A Roy and I. Q This was in October of 1972? A No, that would have been in September. Q September. A In October I saw him back in Addison.

"Q When did you leave St. Martins? A When I found out he was still married.

"MR. BRYDON: I have no further questions. * * *

"MR. McFADDEN [for the defendant]: Your Honor, that last answer was not responsive to the question. It was totally voluntary. It's highly inflammatory. It's not admissible for any reason, has no bearing upon any issue in this case. I ask it be stricken and not only that, I'd ask a mistrial be declared on the grounds that it appears to have been a predesigned response on the part of the Prosecution.

"THE COURT: Well, the objection will be sustained. * * * The jury will disregard the last answer made by the witness to the Prosecutor's question, and request for mistrial will be denied."

Appellant, in contrast to the foregoing reasons for a mistrial presented to the trial court, now says the volunteered statement required a mistrial because it implied "a relationship of either bigamy or adultery, both of them crimes totally unrelated to that for which [he] was being tried."

 The foregoing demonstrates that the grounds for mistrial now asserted are not the same as those presented to the trial court. Accordingly, the point has not been preserved for review. *State v. Spencer,* 486 S.W.2d 433, 434 (Mo.1972); and since the court immediately instructed the jury to disregard the volunteered statement, it does not appear as a matter of "plain error" that the court abused its discretion in refusing to declare a mistrial. Rule 27.20(c), V.A. M.R.; *State v. Parker,* 476 S.W.2d 513, 515– 516 (Mo.1972).

Appellant charges the court erred (V) in allowing witness Hughes to testify the .22 caliber pistol in evidence had been stolen "because it constituted evidence of another crime," and tended to prove nothing in the case, *State v. Martin,* 506 S.W.2d 473 (Mo. App.1974); *State v. Burnett,* 429 S.W.2d 239 (Mo.1968); Mo.Dig., Criminal Law ⊜369; and (VI) in admitting Exhibit 11, an employment application in the name of Kenneth Holm, because it was irrelevant.

 Reference to other crimes unrelated to the case on trial violates a defendant's right to be tried for the offense with which he is charged unless such proof has some legitimate tendency to establish defendant's guilt of the crime charged. *State v. Martin,* supra, 506 S.W.2d 1. c. 474[2, 3]. In the latter respect, proof tending to show that defendant stole the murder weapon from his brother-in-law was legitimate proof of his preparations to commit the crime. *State v. McRoberts,* 485 S.W.2d 70 (Mo.1972); *State v. Boyer,* 476 S.W.2d 613 (Mo.1972). The same may be said of Exhibit 11 because, by obtaining employment under a fictitious name, defendant became acquainted with money procedures at Holiday Inn while at the same time hiding his true identity.

Appellant contends the court erred (VII) in admitting the opinion of Kenneth Miller that the fatal bullet came from the gun found on defendant "where there was no testimony as to the facts on which that opinion was based." See 20 Am.Jur., Evidence § 794; *Raub v. Carpenter,* 187 U.S. 159, 23 S.Ct. 72, 47 L.Ed. 119 (1902); *Kimmie v. Terminal R. R. Ass'n of St. Louis,* 334 Mo. 596, 66 S.W.2d 561, 565 (1933).

Mr. Miller, after qualifying as a ballistics expert, described the procedures he used, what he looked for by way of "class" characters, signature striations, etc. He testified to matters within his personal knowledge and observation. Receipt of his opinion was proper under the rule that an expert witness may base his opinion on matters within his personal knowledge or observation, or upon competent evidence, or both. *Curtis v. Fruin-Colnon Contracting Co.,* 363 Mo. 676, 253 S.W.2d 158, 163 (Mo. 1952) (reversed on other grounds); *Summers v. Tavern Rock Sand Co.,* 315 S.W.2d 201, 206 (Mo.1958).

Appellant charges the court erred (VIII) in admitting in evidence Exhibit 14, four live .22 caliber bullets and one spent .22 caliber casing, and Exhibit 17, $228 in paper currency, because they were not shown to be relevant to any issues at trial.

 The items constituting Exhibits 14 and 17 were part of the property taken from the person of Roy Lee Kerr upon his arrest. The expended casing was relevant in that it bore on whether defendant had fired the fatal shot. The State's expert testimony showed that the fatal bullet and the expended casing were fired from the gun found on defendant's person, although the expert could not say that the fatal bullet came from the casing in question. Nevertheless, since no casing was found at the scene, the jury could infer that defendant had retained it and, found on his person, tended to identify him with the crime. It does not appear how the four live bullets

of Exhibit 14 and the currency, Exhibit 17, were relevant to any issue in the case. However, there is no claim that these items inflamed the jury, they were not evidence of other crimes (see *State v. Ball,* 339 S.W.2d 783 (Mo. banc 1960)), and it does not appear that they diverted the jury's attention from the issues it had to resolve. In such circumstances, those items fall within the rule that "admission in evidence of facts immaterial or irrelevant to the issues and without probative force cannot constitute prejudicial or reversible error." *State v. Walden,* 490 S.W.2d 391, 393 (Mo.App.1973). See also *State v. Parker,* supra, where the court found that testimony of witnesses surmising that a burglary was in progress was irrelevant, but reversal was not required because admission of irrelevant and immaterial evidence is not inherently prejudicial.

Appellant asserts (IX) that testimony of Officers Patton and Finke was completely irrelevant and immaterial. Appellant concedes that the effect of their testimony is difficult to assess, but argues that such testimony prejudiced defendant because the witnesses were police officers, offered by the State and against defendant.

■ The testimony of Officers Patton and Finke was material and relevant as a foundation for testimony from Carol Cook who recognized defendant from a photograph and placed him in Jefferson City on the eve of the robbery-murder, and for testimony from Officer Jerome Dolan that he knew Roy Lee Kerr in Addison, Illinois, as well as knowing his use of aliases Ken Holm and Doug Holm.

Judgment affirmed.

All concur.