T. J. GREENHAW, Petitioner,

v.

Donald WYRICK, Warden, Missouri State Penitentiary, Respondent.

No. 78–0967–CV–W–1.

United States District Court, W. D. Missouri, W. D.

June 14, 1979.

---

732

T. J. Greenhaw, pro se.

Robert L. Presson, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Chief Judge.

Petitioner, presently confined at the Missouri State Penitentiary, has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254 challenging his 1975 conviction for first degree murder in the Circuit Court of Jasper County, Missouri. Pursuant to that conviction, he now serves a life sentence. His direct appeal was unsuccessful. *State v. Greenhaw*, 553 S.W.2d 318 (Mo.App.1977).

Petitioner presents twelve claims:

1. that the first information against him was dismissed and that a second information was then filed;

2. the state court should have suppressed the evidence obtained from petitioner after his arrest because that evidence was obtained as the result of a complaint that was subsequently dismissed for lack of probable cause;

3. that the state reviewing courts failed to note that the state did not appeal from the dismissal of the first information for lack of probable cause;

4. the state should not have been allowed to introduce evidence taken from petitioner at the time of his arrest because it was obtained pursuant to a complaint that was dismissed for lack of probable cause;

5. petitioner was denied a fair trial when the state courts refused to apply principles of "collateral estoppel" after

the first information was dismissed for want of probable cause;

6. the state courts erred by requiring petitioner to show that certain custodial statements were involuntary;

7. petitioner's custodial statements were involuntary because he suffered from "mania" and the effects of drug abuse at the time he made them;

8. the state failed to come forth with sufficient evidence of petitioner's sanity after he presented contrary expert testimony and the state failed to produce sufficient evidence of his sanity;

9. the trial court erred in failing to give a manslaughter instruction;

10. the state requirement that petitioner prove his insanity by a preponderance of the evidence was unconstitutional;

11. the state court denied petitioner due process when it permitted the state to call a psychiatric witness on rebuttal who had not previously been endorsed; and

12. the state court lacked jurisdiction to try or convict petitioner after the first complaint was dismissed for lack of probable cause.

In response to an earlier order, the state submitted a full response to these claims. Petitioner then filed a traverse. The state argues that petitioner has not exhausted state remedies on certain claims presented in this action and that all of his points are without substantive merit. The Court will first address the exhaustion argument.

■ It is axiomatic that a state prisoner seeking federal habeas corpus relief must first exhaust state remedies by giving state appellate courts a fair opportunity to rule upon the claims to be presented in the federal petition. *See, e. g., Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Picard v. Connor*, 404 U.S. 270, 91 S.Ct. 1620, 29 L.Ed.2d 110 (1972); *Harkins v. Wyrick*, 589 F.2d 387 (8th Cir. 1979); *Tolliver v. Wyrick*, 469 F.Supp. 583 (W.D. Mo.1979). Where a petition contains both exhausted and unexhausted claims, the court must dismiss those that are unex-

hausted and consider the exhausted claims. *Triplett v. Wyrick*, 549 F.2d 57 (8th Cir. 1977).

■ To determine whether petitioner has exhausted state remedies, and, if so, the extent of exhaustion, the Court must examine the records, pleadings, and briefs compiled in or submitted to the state courts. *United States ex rel. Geisler v. Walters*, 510 F.2d 887 (3d Cir. 1975); *Martin v. Parratt*, 412 F.Supp. 544 (D.Neb.1976). The records of petitioner's direct state appeal show that he presented seven claims to the Missouri Court of Appeals:

1. The state failed to produce sufficient evidence that petitioner was sane after he carried his burden of showing that he was insane by production of expert testimony.

2. The trial judge abused his authority in questioning the state's expert psychiatric witness.

3. The trial court erred in overruling petitioner's pre-trial motion to suppress because the arresting officer lacked reasonable suspicion of criminal activity sufficient to justify petitioner's arrest; the illegality of the arrest required the trial court to suppress all evidence seized as the result of the arrest.

4. Petitioner's arrest was illegal because the complaint and warrant issued in Cedar County, Missouri, were based solely upon hearsay insufficient to support an independent determination that probable cause existed.

5. The prosecutor lacked authority to file an information.

6. The trial court erred in admitting testimony from the state's ballistics expert because it was based upon hearsay.

7. The Court erred when it refused to give the Missouri pattern instruction on manslaughter.

*State v. Greenhaw*, 553 S.W.2d 318 (Mo. App.1977), petitioner's brief at 5–8.

■ When the points raised on direct state appeal are compared with those submitted in this action, it is clear that the second, fifth, sixth, seventh, and eleventh

claims in this action have not previously been presented to the Missouri appellate courts. Because petitioner has not yet filed a motion under Missouri Rule 27.26, he still has an available avenue of relief in the state courts through which he may press his second, fifth, sixth, seventh and eleventh claims in this petition. Accordingly, these claims will be dismissed for failure to exhaust state remedies, *Picard v. Connor, supra,* and the Court will consider his remaining, exhausted claims. *Triplett v. Wyrick, supra.*

■ Petitioner's remaining claims are presented in no particular order, but they may readily be grouped into certain categories for analysis. The first and third claims appear to be no more than assertions of fact concerning the state proceedings or the analysis employed by the state courts. Hence, they warrant no separate consideration. *Cf. Toler v. Wyrick,* 563 F.2d 372 (8th Cir. 1977). Petitioner's fourth claim, which relates to the alleged lack of probable cause for his arrest, dismissal of the first information, and the alleged need for suppression of evidence, will be considered separately. The eighth and tenth claims, which relate to petitioner's defense of incompetence, will be considered together. The ninth claim, with relates to the omitted manslaughter instruction, and the twelfth claim, concerning jurisdiction, will be considered separately.

Petitioner's fourth claim reads as follows:

Petitioner was prejudiced and denied a fair trial wherein the State was allowed to use evidence obtained in an illegal arrest in complaint and warrant numbers 6331 and 6334 [the original complaints issued against petitioner and later dismissed] to obtain a conviction in complaint and warrant 6591, for the reasons that the exclusionary rule, when used to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth Amendment, since it is directed at *all* unlawful searches and seizures and not merely those that happen to produce incriminating material or testimony as fruits. All of the evidence used to convict in case number 6591 was the fruits of the arrest in case numbers 6331 and 6334 that had been dismissed for lack of probable cause and *no* appeal taken therefrom. [Emphasis original.] The Missouri Court of Appeals viewed this claim as a two-pronged attack based on the Fourth Amendment:

[Petitioner] first contends his being stopped by the Blue Springs police officer was an unlawful seizure and all evidence seized as a result of the arrest which followed should have been excluded at his trial. The second prong of his Fourth Amendment attack on the lower court's ruling is that his arrest was unlawful because it was based upon an invalid arrest warrant and therefore evidence obtained as the result of the arrest was tainted.

*State v. Greenhaw,* 553 S.W.2d 318, 323 (Mo.App.1977).

The facts underlying this claim arose in the following fashion. After receiving information tending to show that petitioner had abducted his estranged wife some days earlier, officials in Cedar County, Missouri, applied for an arrest warrant charging petitioner with kidnapping. Officials placed this information into the National Crime Information Center computer on the date the warrant was issued, March 4, 1974.

Four days later, a Blue Springs, Missouri, police officer stopped petitioner and three other young men along the side of a state highway in that community. The police officer, who also acted as a juvenile officer, stopped the four men because they appeared to be of school age and school was in session. He asked each of the four to produce identification and checked the names of each with the police dispatcher. The Cedar County warrant came to light during this check, and the officer asked petitioner if he knew of its existence. Upon receiving a negative answer, the officer contacted his dispatcher again for confirmation that the warrant was still outstanding. Blue Springs officers contacted Cedar County officials and found that the warrant was still valid and might involve a homicide. The

officer placed petitioner under arrest, informed him of his "*Miranda* rights," and asked if he knew where his wife was. Petitioner stated that he thought she had left the state. *Id.* at 322.

Upon his arrival at the police station, petitioner was booked and searched by Blue Springs officers. This search revealed an incriminating note in petitioner's wallet. Later, in response to a subsequent request from Cedar County officers, Blue Springs police again gave petitioner "*Miranda* warnings" and asked if he knew about a shotgun believed to be the weapon used to kill his wife. Petitioner provided information concerning the purchase of the shotgun and its location, but refused to answer questions concerning the death of his wife. The evidence obtained in Blue Springs played a prominent role at petitioner's trial. *Id.*

Petitioner presented an unsuccessful motion to suppress the foregoing evidence at trial, and the Court of Appeals gave plenary consideration to the claim, despite error in its presentation. *Id.* at 323. In doing so, the Court commendably and properly exercised its discretion, *see* Rule 84.08, V.A.M.R., to hear an important constitutional claim. *Cf. Tolliver v. Wyrick*, 469 F.Supp. 583, at 590, 596 601, & n.9 (W.D.Mo.1979).

■ The Court of Appeals' application of federal law, particularly *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), was commendable—and correct—in all respects.

In analyzing petitioner's first claim, the Court of Appeals started from the established proposition in *Terry* that not every contact between a police officer and a private individual is a seizure for purposes of the Constitution. The Court of Appeals noted Missouri's statutes governing compulsory school attendance, the penalty provisions enacted to enforce attendance, and the provisions making certain law enforcement officers "ex officio school attendance officers." The Court of Appeals also noted that the arresting officer—who was also the designated juvenile officer of the Blue Springs police force—had reasonable suspicion to make the initial stop. *See Terry v. Ohio, supra,* at 12, 88 S.Ct. 1868.[1] On this basis, the Court of Appeals found that the initial stop of petitioner did not violate applicable federal constitutional standards.

In support of the second prong of his argument, petitioner argued that the complaint filed in Cedar County which formed the basis for his arrest was invalid because it was not supported by probable cause. *State v. Greenhaw, supra,* at 324. The Missouri Court of Appeals found it unnecessary to reach this claim; it found instead that at the time of petitioner's arrest, police officers had probable cause—facts and circumstances within their knowledge and of which they had reasonably trustworthy information that were sufficient to warrant a prudent man in believing that petitioner had committed or was committing an offense. *Id.* at 325, *quoting Beck v. Ohio*, 379 U.S. 89, 95, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

■ The Court of Appeals, relying on long-established federal principles, held that an arrest, though supported by an invalid warrant, is lawful if the demanding authority had probable cause for the arrest. *Id., citing Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931), *and State v. Kerr*, 531 S.W.2d 536 (Mo.App. 1975). The Court of Appeals also properly noted that the arresting officer need not have probable cause to make an arrest on the request of an authority that does have probable cause. *Id., citing Young v. United States*, 344 F.2d 1006 (8th Cir. 1965).

---

1. *Delaware v. Prouse*, —— U.S. ——, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), does not require a different conclusion. In *Prouse*, the Supreme Court held that random stops of motor vehicles for license or registration checks violated the Fourth Amendment. The Court stated, however, that such checks could be made where "reasonable and articulable suspicion" exists. *Id.* —— U.S. at ——, 99 S.Ct. 1401. Thus, the Court continues to adhere to the "reasonable and articulable suspicion" standard announced in *Terry* and applied by the Missouri Court of Appeals in petitioner's case.

The Court of Appeals then concluded by reciting the facts known to the demanding authority at the time of petitioner's arrest:

The collective knowledge of the officers in the instant case demonstrate probable cause for the defendant's arrest. Information in their possession at the moment of arrest included the following: defendant and his wife were having marital problems, a divorce was pending and they were living separate and apart; she was afraid of defendant and did not want to meet with him alone at her parents' home; she was last seen on February 22 with the defendant and told her mother she would return in thirty minutes; her glasses were found an hour and one-half later on a country road; the defendant was to have returned his grandfather's truck by one o'clock that day and the truck was found abandoned eight days later; the defendant could not be found; the defendant had prior to February 22 written he was going to buy a certain gauge shotgun and shells and kill his wife; the letter was found in the truck, along with an empty shotgun shell box; a search by area law enforcement officers had failed to locate the missing wife; a fired shotgun shell of the same brand, gauge and size shot of the shell box found in the truck was found near where the girl's glasses had been found.

Since the officer's investigating Lee Ann's sudden and unexplained disappearance had probable cause to believe [that] she was the victim of criminal action by the defendant they could direct the Blue Springs officer to arrest him. His arrest of the defendant without a warrant was valid even though he personally did not have knowledge of all the facts establishing probable cause for a warrantless arrest. The arrest being lawful, the search of defendant as an incident thereof was permissible and items seized proper evidence.

*State v. Greenhaw, supra,* 553 S.W.2d at 325.

■ The Court of Appeals' lucid and comprehensive treatment of this claim was correct in all respects touching on federal law, and it was doubly cogent in view of the ambiguous nature of the claim itself. And, insofar as petitioner purports to base his claim on Fourth Amendment principles, the Court of Appeals' opinion, coming after a full suppression hearing in the trial court, forecloses further consideration of the claim. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct 3037, 49 L.Ed.2d 1067 (1976); *Hines v. Auger,* 550 F.2d 1094 (8th Cir. 1977). *See also O'Berry v. Wainwright,* 546 F.2d 1204 (5th Cir. 1977).

Accordingly, petitioner's fourth claim will be denied.[2]

In his next two exhausted claims, petitioner makes various allegations concerning his defense of incompetence. First, petitioner alleges that the state failed to come forth with sufficient evidence of sanity after petitioner had introduced contrary expert testimony of insanity. Second, petitioner argues that the state failed to adduce

---

**2.** It is possible to infer that this claim is not based on Fourth Amendment principles *per se,* but is instead based on the theory that the dismissal of the first complaint against petitioner for want of probable cause perforce required invalidation of his earlier arrest and the searches incident thereto. The constitutional basis for the claim is unclear, and, when summarized in this fashion, it appears to reduce to the equivalent of petitioner's second claim, which has been dismissed for failure to exhaust state remedies. Thus, if this claim is construed as noted above, it must be dismissed for failure to exhaust.

In passing, the Court notes that this claim appears to be based on a misapprehension concerning the role of the preliminary hearing in Missouri law. Under Missouri Rules 23.02 and 23.08, a preliminary hearing is convened to determine whether there is sufficient evidence to bind a defendant over for trial. *Collins v. Swenson,* 443 F.2d 321 (8th Cir. 1970). The quantum of proof and evidence admissible in a probable cause hearing is fundamentally different from that admissible in support of a search or arrest warrant. It therefore appears that a finding of "no probable cause" after a preliminary hearing only serves to discharge a defendant, but does not retroactively invalidate arrests or searches supported by probable cause. *Cf. Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

sufficient evidence of petitioner's sanity. Finally, petitioner alleges that Missouri's rule requiring him to prove his insanity by a preponderance of the evidence was unconstitutional. None of these allegations entitles petitioner to relief.

At trial, petitioner tendered a defense of insanity at the time of the offense, and he presented expert psychiatric testimony in support of his claim. Having presented such testimony, Missouri law made this defense a matter for the jury. RSMo § 552.030(7). The trial transcript shows, however, that the state also adduced evidence from a psychiatrist, who testified that petitioner was legally sane at the time he committed the offense. The trial curt instructed the jury on the issue in accord with the dictates of state law, and the jury evidently refused to accept the defense of incompetence.

Under federal law, allegations of insufficient evidence are cognizable in federal habeas corpus only if the record is so devoid of evidentiary support that a due process issue is raised. *Wilson v. Parratt*, 540 F.2d 415 (8th Cir. 1976); *Cuhna v. Brewer*, 511 F.2d 894 (8th Cir. 1974); *Hendricks v. Swenson*, 456 F.2d 503 (8th Cir. 1972); *Boothe v. Wyrick*, 452 F.Supp. 1304 (W.D.Mo.1978). Clearly, there was evidence from which the jury could have accepted or rejected the tendered defense of incompetence. Its choice, as reflected by its rejection of the defense, is not subject to review in federal habeas corpus. *See, e. g., Pigford v. United States*, 518 F.2d 831 (4th Cir. 1975); *Randall v. Wyrick*, 441 F.Supp. 312 (W.D.Mo.1977). Petitioner is not entitled to relief on either of his claims concerning sufficiency of evidence on the competence defense.

As to the third competence-related claim, it has long been held that states may constitutionally require a defendant to prove incompetence by a preponderance of the evidence. *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1977); *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1951); *Stanley v. Mabry*, 596 F.2d 332 (8th Cir. 1979); *Hill v. Lockhart*, 516 F.2d 910 (8th Cir. 1975). Thus, petitioner is not entitled to relief on this aspect of his claims.

Accordingly, petitioner is not entitled to relief on any of the claims concerning his defense of incompetence, as embodied in his eighth and tenth requests for relief.

Next, petitioner asserts that he was denied due process when the trial court refused to give a manslaughter instruction. He also has provided a supplemental traverse detailing state cases that allegedly support his claim. Whatever relief may be available to petitioner under state law, the refusal to give a lesser included offense instruction does not state a claim cognizable in federal habeas corpus. *Cooper v. Campbell*, 597 F.2d 628 (8th Cir. 1979); *United States v. Scharf*, 558 F.2d 498 (8th Cir. 1977); *DeBerry v. Wolff*, 513 F.2d 1336 (8th Cir. 1975); *Franco v. Wyrick*, 465 F.Supp. 679 (W.D.Mo.1979); *Boothe v. Wyrick*, 452 F.Supp. 1304 (W.D.Mo.1978); *Young v. Wyrick*, 451 F.Supp. 576 (W.D.Mo.1978). Petitioner is not entitled to relief on this ground.

Petitioner's last exhausted claim asserts that once the state magistrate dismissed the first complaint for lack of probable cause, the state courts lost jurisdiction to conduct further proceedings against him.

Under Missouri law, discharge of a defendant at a preliminary hearing does not bar the prosecutor from filing a new complaint with a second magistrate. *State v. Thomas*, 529 S.W.2d 379 (Mo.1975), *citing* 21 Am.Jur.2d, Criminal Law, § 450, at 452–53. This rule conforms to the procedure used in various federal courts. *United States v. Kysar*, 459 F.2d 472 (10th Cir. 1972); *United States v. Coley*, 441 F.2d 1299 (5th Cir. 1971). More importantly, however, this claim turns on construction of state law. Thus, the Court is bound by the decision of the state appellate courts on the point. *Harkins v. Wyrick*, 589 F.2d 387 (8th Cir. 1979); *Russell v. State of Missouri*, 511 F.2d 861 (8th Cir. 1975); *Huffman v. State*

*of Missouri,* 399 F.Supp. 1166 (W.D.Mo. 1975), *aff'd,* 527 F.2d 899 (8th Cir. 1976); *Robinson v. Wolff,* 349 F.Supp. 514 (D.Neb. 1972). Since the state appellate courts have ruled upon this question and since that decision does not conflict with applicable federal law, petitioner is not entitled to relief on this ground.[3]

 As to petitioner's exhausted claims, the Court finds that petitioner received full and fair consideration of his arguments in the Missouri courts and that the Missouri courts properly applied federal legal standards in all cognizable respects. The Court therefore finds that petitioner has not carried his burden of showing that the state court findings are not supported by the record. 28 U.S.C. § 2254(d). Petitioner's exhausted claims may therefore be denied without a hearing. *Boothe v. Wyrick,* 452 F.Supp. 1304 (W.D.Mo.1978); *Randall v. Wyrick,* 441 F.Supp. 312 (W.D.Mo.1977).

For the reasons stated above, it is

ORDERED (1) that petitioner's second, fifth, sixth, seventh, and eleventh claims should be and they are hereby dismissed for failure to exhaust state remedies. It is further

ORDERED (2) that petitioner's remaining claims should be and they are hereby denied.

---

**3.** This claim might also be construed as asserting that the state appellate courts lost authority to review the legality of petitioner's arrest and the searches incident thereto once the magistrate dismissed the first complaint. If so, the claim does not present an issue cognizable in federal court. The process by which state courts review the sufficiency of state criminal

convictions is purely a matter of state law. *Cf. United States v. MacCollom,* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976); *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *McKane v. Durston,* 153 U.S. 384, 14 S.Ct. 913, 34 L.Ed. 867 (1894); *Toler v. Wyrick,* 563 F.2d 372 (8th Cir. 1977).