**Kenley A. MULLER, Petitioner,**

v.

**Thomas R. ISRAEL and Bronson C. La Follette, Attorney General of the State of Wisconsin, Respondents.**

No. 80–C–318.

United States District Court,
E. D. Wisconsin.

March 18, 1981.

Richard M. Sals, Asst. State Public Defender, Madison, Wis., for petitioner.

Chris C. Heikenen, Asst. Atty. Gen., Madison, Wis., for respondents.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a habeas corpus action brought pursuant to 28 U.S.C. § 2254. On March 12, 1977, following a jury trial, petitioner Kenley A. Muller was convicted of first-degree murder. Following his conviction, the circuit court sentenced him to life imprisonment. On March 4, 1980, the Wisconsin Supreme Court affirmed his conviction.

Petitioner challenges the validity of his conviction on two grounds. First, he contends that the circuit court erred by giving a jury instruction which the jury could have interpreted as shifting to him the ultimate burden of persuasion on the issue of intent. Second, he contends that the circuit court erred by refusing to submit to the jury an instruction on the lesser included offense of manslaughter. After reviewing the facts of the case, the Court will address petitioner's arguments.

### I. *Factual Background*

Because the Wisconsin Supreme Court set forth an accurate, detailed summary of the testimony at trial in its decision affirming petitioner's conviction, *Muller v. State*, 94 Wis.2d 450, 454–459, 289 N.W.2d 570 (1979), it is not necessary to review the trial testimony in depth. A brief summary will suffice.

Patrolman Harold Smith of the Beloit Police Department testified that, at 2:19 A.M. on June 26, 1976, he was dispatched to 1147½ Partridge Avenue in Beloit, Wisconsin. When he arrived, he saw Peggy Muller, petitioner's estranged wife, standing in the driveway. She told Smith that she had just received a telephone call from the petitioner and that he had threatened to shoot her and her boyfriend, who was in the apartment. She then told Smith that the petitioner was driving an orange Ford Bronco. Smith said he would search the area for the vehicle and would watch her house for the remainder of the night. He then left.

At approximately 2:57 A.M. on June 26, 1976, two Beloit police officers, Kevin W.

Connors and Robbie Ray Lowery, responded to a dispatch regarding a shooting at 1147½ Partridge Avenue. When they arrived at the scene, Peggy Muller and Susan Lund, a neighbor who lived in the apartment below Mrs. Muller at the time of the shooting, were standing in the driveway.

Officer Connors testified that he proceeded to the rear of the house, went up the stairs to Mrs. Muller's apartment, noticed that the kitchen door had been broken open and proceeded down a hallway to the bedrooms. In one of the bedrooms, he saw two children on the bed and a white male (later identified as the decedent, Buford (Pee Wee) B. Troxel) lying crouched on the floor while leaning against a closet door frame and a bed. Connors observed bullet holes in his neck, his left shoulder and directly above his heart.

Because the State could not procure Mrs. Muller's attendance at trial, the court allowed it to read into evidence at trial her testimony taken at the preliminary hearing and her statements made to Officer Smith shortly after the shooting. At the preliminary hearing, Mrs. Muller testified that on June 26, 1976, she was separated from the petitioner and was living at 1147½ Partridge Avenue. On that date, at 2:57 A.M., she was in the bedroom of her apartment with Troxel when she heard a loud noise outside.

In her statement made shortly after the shooting, Mrs. Muller told Officer Smith that she had been sitting on the edge of the bed looking out of the bedroom window when she saw the petitioner. She testified that she walked out of the bedroom and saw the petitioner standing in the kitchen with a gun in his hand. She saw the defendant walk from the kitchen into the hall. She then heard two shots.

A firearms identification specialist testified that the murder weapon was a single action .22 caliber revolver which could be fired only by pulling the hammer back first and then pulling the trigger. The undisputed evidence showed that three bullets entered decedent's body.

Finally, Douglas A. Witt, Rock County Deputy Sheriff, testified that, on June 26, 1976, at 3:31 A.M., he was sent to Walker Road to investigate a report that an injured person was lying alongside the road. When he arrived at Walker Road, he saw a body, later identified as petitioner's body, lying on the road. He testified that the petitioner stated, "Tell my wife that I love her more than she will ever know."

The petitioner's version of the events surrounding the shooting varied substantially from the State's version of the shooting. At the trial, petitioner took the stand on his own behalf and testified that at the beginning of June, his sister told him that Peggy was seeing another man, but he could not believe it. After midnight on June 26, 1976, he went over to his sister's house. At that time, she told him that Pee Wee Troxel was the man Peggy was seeing. She also described Troxel's car to him. The petitioner testified that he was mad and upset. He left his sister and telephoned Peggy from a phone booth. During that phone call, petitioner testified that Peggy admitted she was going out with Troxel. Petitioner told her he was coming up to see her; she told him not to. She then hung up.

Petitioner testified that, after the phone call, he immediately drove to Peggy's apartment, saw Troxel's car parked outside and pulled in right behind it. When he saw the car, he became furious, ran across the yard, ran up the stairs and kicked the door in. He went into the living room, saw both children sleeping, proceeded down the hall to the bedroom and saw a hand holding a pistol come out of the bedroom. Petitioner testified that he grabbed the pistol and arm with both hands and the pistol broke free of the man's hand. The pistol then went off. Petitioner could not recall anything that happened after the pistol went off.

At the close of the evidence, the petitioner requested that the court instruct the jury on the lesser included offense of manslaughter. The court denied the request. The court, however, did give the jury the standard instruction for first degree murder where the cause of death is not an issue.

The critical portion of Wisconsin Jury Instruction 1100 ("the Wisconsin instruction") which the court read to the jury states:

> When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable and usual consequences of his deliberate acts. If one person assaults another violently with a dangerous weapon likely to kill, and the person thus assaulted dies therefrom, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended.

## II. *Burden of Proof Issue*

The above-quoted portion of the Wisconsin instruction describes two legal presumptions pertinent to the element of intent. The presumptions are referred to as the "natural and probable consequences" presumption and the "dangerous weapon" presumption. Because the Court's holding in this memorandum and order is based on language contained in both instructions, the Court does not find it necessary to consider the presumptions separately and will limit its discussion to the "natural and probable consequences" presumption. The analysis applied in determining the constitutionality of that presumption applies to the "dangerous weapon" presumption as well.

In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court reversed a decision of the Montana Supreme Court and declared unconstitutional a Montana jury instruction on criminal intent. In that decision, the Supreme Court held that, in a case in which intent was an element of the crime charged, the jury instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts," violated the defendant's constitutional right to due process of law because the jury may have interpreted the instruction as constituting either a burden-shifting presumption or a conclusive presumption. *Id.* at 517, 99 S.Ct. at 2455.

In the case at bar, the challenged instruction contains substantially the same language as the defective instruction in *Sandstrom*. In addition to the defective language, however, the Wisconsin instruction contains the clause, "when there are no circumstances to prevent or rebut the presumption." Thus, the issue this Court must resolve is whether the additional language validates an otherwise constitutionally infirm instruction.

The constitutionality of the Wisconsin instruction was addressed by the Wisconsin Supreme Court in its decision in this case. *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1979). There, the Wisconsin Supreme Court held that the challenged instruction is constitutional because no reasonable juror could interpret it as shifting the burden of persuasion to the defendant. *Id.* at 477–478, 289 N.W.2d 570.

The constitutionality of the instruction also has been addressed by two of the other federal district courts in this district. In *Pigee v. Israel*, 503 F.Supp. 1170 (E.D.Wis. 1980), Judge Evans held that the Wisconsin instruction is constitutional because it does not shift the burden of persuasion to the defendant. Judge Evans opined that, at most, the instruction requires that a doubt be raised in the jury's mind as to defendant's intent. In *Dreske v. Wisconsin Department of Health and Social Services*, 483 F.Supp. 783 (E.D.Wis.1980), Judge Reynolds held that an instruction substantially the same as the instruction challenged here was unconstitutional because it did not require the state to bear the burden of proof beyond a reasonable doubt on every element of the crime charged as required by *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

The decisions of other federal district courts and Wisconsin Supreme Court provide relevant background and insights into the issue at bar. They are not, however, dispositive, for the issue is not how judges interpret the instruction, but how a "reasonable person could have interpreted the instruction." *Sandstrom v. Montana*, 442 U.S. at 514, 99 S.Ct. at 2454.

In ascertaining how a reasonable juror could have interpreted the instruction, the Court must pay "careful attention to the words actually spoken to the jury." *Id.* 442 U.S. at 514, 99 S.Ct. at 2454; *Ulster County Court v. Allen,* 442 U.S. 140, 157–159 n. 16, 99 S.Ct. 2213, 2224–2225 n. 16, 60 L.Ed.2d 777 (1979). The Court may not, however, judge the instruction in artificial isolation, but must view it in the context of the overall charge. *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

Although the ultimate issue in determining the constitutionality of the instruction is how a reasonable juror could interpret it, the threshold inquiry in ascertaining the constitutional analysis applicable to the jury instruction is to determine the nature of the presumption it describes. In *Ulster* a case decided shortly before *Sandstrom* and relied upon in *Sandstrom,* the Supreme Court discussed the different categories of presumptions and divided them into two classifications: permissive and mandatory presumptions.

According to the Supreme Court in *Ulster,* a permissive inference or presumption allows—but does not require—the trier of fact to infer an element of the crime (elemental fact) upon proof by the prosecution of another fact (basic fact). Such an inference or presumption is constitutional because it leaves the trier of fact free to credit or reject the inference and because it does not shift the burden of proof to the defendant. *Ulster County Court v. Allen,* 442 U.S. at 157, 99 S.Ct. at 2224.

A mandatory presumption informs the trier of fact that he must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. *Id.* Mandatory presumptions are further divided into two types: rebuttable presumptions that merely shift the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution; and irrebuttable presumptions that entirely shift the burden

of proof to the defendant. *Id.* at 157–158 n. 16, 99 S.Ct. at 2224–2225 n. 16.

As stated earlier, permissive inferences and presumptions are constitutional because they leave the trier of fact free to credit or reject the inference and because they do not shift the burden of proof. *Id.* at 157, 99 S.Ct. at 2224. Irrebuttable mandatory presumptions are unconstitutional because they shift the burden of proof to the defendant, thus relieving the prosecution of its burden of proving every element of a crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

■ Determining the constitutionality of a rebuttable mandatory presumption—the presumption that shifts the burden of production to the defendant, following the satisfaction of which the ultimate burden of proof of persuasion returns to the prosecution—presents a more difficult problem. To the extent that a rebuttable mandatory presumption imposes any burden of production on the defendant, a court must, of course, determine the impact that burden has on the ultimate burden of persuasion as perceived by a reasonable juror. If the burden of production placed on defendant is such that a reasonable juror could conclude that the defendant bears the burden of persuasion, the presumption is unconstitutional. If the burden of production is low, however, it is possible that no constitutional problem exists. As the Supreme Court in *Ulster* stated: "to the extent a presumption imposes an extremely low burden of production e. g., being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such." *Ulster County Court v. Allen,* 442 U.S. at 158 n. 16, 99 S.Ct. at 2225 n. 16.

The Supreme Court's recognition that the impact of a rebuttable mandatory presumption with an extremely low burden of production is no greater than the impact of a permissive inference is consistent with Thayer's "bursting bubble" theory. McCormick's Handbook on the Law of Evidence 821 (2nd ed. 1972), *see* 9 Wigmore on Evidence § 2491. According to that theory, the

only effect of a rebuttable presumption is to shift the burden of producing evidence with regard to the presumed fact. If that evidence is produced, the presumption is spent and disappears.

▪ In the case at bar, the presumption in the challenged instruction creates a rebuttable mandatory presumption. The constitutional infirmities of that portion of the instruction similar to the instruction struck down in *Sandstrom* are cured by the additional clause—"when there are no circumstances to prevent or rebut the presumption." This additional language makes it clear that the presumption can be rebutted. Thus, the question is whether the burden of production placed on the defendant by the presumption could lead reasonable jurors to believe that the burden of persuasion on the issue of intent rested with the defendant.

The Court is of the opinion that the instruction could not have led reasonable jurors to conclude that the burden of persuasion on the issue of intent rested with the defendant. This conclusion is based on the burden of production placed on the defendant, the language of the instruction itself, and the impact of rebutting circumstances on the applicability of the instruction.

The burden of production placed on the defendant by the Wisconsin instruction is minimal. The presumption applies only "when there are *no* circumstances to rebut or prevent the presumption." That language is simple and straightforward: the jury is not to apply the presumption if there are *any* circumstances, whether presented by the prosecution or the defense which rebut or prevent the presumption.

The petitioner argues that the instruction is unconstitutional because a juror could equate the words "prevent or rebut" with the word "disprove." Although it is true that the word "rebut" can be equated with the word "disprove," *Random House Dictionary*, p. 1100, the word "prevent" is not synonymous with disprove and none of its definitions are of a type which could lead a reasonable juror to equate it with disprove. Inasmuch as the presumption becomes inoperative when either rebutting *or* preventing

circumstances are present, the Court is of the opinion that no reasonable juror would ignore the language of the instruction and require that both rebutting *and* preventing circumstances be present.

The impact of the challenged instruction on the burden of persuasion is dependent upon the existence or nonexistence of circumstances rebutting or preventing the presumption. The presumption is operative only in the absence of circumstances rebutting or preventing the presumption. Therefore, in cases where there are rebutting or preventing circumstances, its impact is no greater than that of a permissive inference and no reasonable juror could interpret the instruction as shifting the burden of persuasion to the defendant. In fact, according to bursting bubble theory the impact is even less than that of a permissive inference because no reasonable juror would apply the presumption once circumstances burst it. It is only in those cases where there are no circumstances to rebut or prevent the presumption that the presumption becomes operative and the instruction unconstitutional.

Having determined that the instruction is constitutionally valid in cases where circumstances do exist to rebut or prevent the presumption, the Court must now ascertain whether such circumstances exist in the case at bar.

There is no question that petitioner's defense centered around the intent issue. At trial, petitioner testified that he saw the decedent with a gun after he entered his wife's apartment. He stated that he grabbed the pistol and the decedent's arm with both hands and that the pistol broke free of the decedent's grip. Petitioner testified that, at that point, he had the gun and that the gun went off. As Judge Dahlberg noted in his discussion with the attorneys outside the presence of the jury:

> There are two views of the evidence: One, if you believe the state's view of the evidence, it is murder in the first degree. If you believe the defendant's view of the evidence, it's an accident." (Transcript at 542.)

Inasmuch as the defense presented a complete scenario preventing and challenging the presumption, the presumption's "bubble burst" and the presumption itself became inoperative. Therefore, it was not even necessary for the trial court to give the challenged instruction.

The Court's analysis does not end with the finding that the existence of rebutting circumstances rendered the presumption inoperative. The question still remains whether the trial court, by giving the inoperative instruction, may have led reasonable jurors to believe that the circumstances were not sufficient to rebut or prevent the presumption. Petitioner maintains that, by giving the instruction, the trial court implicitly suggested that there were, in fact, no circumstances preventing or rebutting the presumption. He contends that the jury could have reasonably assumed that the judge would not instruct them on presumptions which could not be employed in the case.

The Court does not agree. Petitioner's argument is based on the assumption that the giving of an inoperative instruction—a "burst presumption"—could lead reasonable jurors to believe that the presumption was still operative. Although petitioner's argument has a certain theoretical appeal, the Court must examine the effect of the inoperative instruction in the context of the entire instructions actually given to the jury.

The Court is of the opinion that in the case at bar the giving of the inoperative instruction had no residual effect. The court instructed the jury several times that the state had the burden of proving every element of the offense charged. In light of those instructions and the circumstances presented by defendant at trial, the Court finds that no reasonable juror could have applied the presumption.

Based on the foregoing, the Court finds that defendant's constitutional right to due process was not violated when the trial court included the challenged instruction in its instructions to the jury.

## III. *Failure to Include Lesser Included Offense*

Petitioner also alleges that the failure of the trial court to give a lesser included instruction on manslaughter denied him a fair trial in violation of the sixth and fourteenth amendments to the United States Constitution. The state offers two arguments in opposition to petitioner's allegation. First, it argues that state court defendants do not have a federal constitutional right to have lesser included offenses submitted to the jury on their state court trials. Second, it contends that, under the facts of this case, the trial court's refusal to submit the requested lesser included offense was proper. Because the state's first argument is correct, the Court need not address the second argument.

█ It is well settled that failure of a state court judge to give instructions on lesser included offenses is not cognizable in a federal habeas corpus proceeding. *Greenhaw v. Wyrick*, 472 F.Supp. 730 (W.D.Mo. 1979); *Booth v. Wyrick*, 452 F.Supp. 1304 (W.D.Mo.1978); *Gist v. State of Oklahoma*, 371 F.Supp. 541 (E.D.Okl.1974). *See also United States ex rel. Parker v. Gray*, 390 F.Supp. 70 (E.D.Wis.1975).

Based on the foregoing, the Court finds that the failure of the trial court to instruct the jury on a lesser included charge did not violate petitioner's constitutional rights.

## IV. *Order*

Based on the foregoing, it is ordered that the petition for a writ of habeas corpus on behalf of Kenley Muller must be and is hereby denied.