STATE of Missouri, Respondent,

v.

William Clyde LEWIS, Appellant.

No. 53829.

Supreme Court of Missouri, Division No. 1.

July 14, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Walter S. Drusch, Jr., Special Asst. Atty. Gen., Cape Girardeau, for respondent.

William O. Russell, Joplin, for appellant.

STORCKMAN, Judge.

A jury found the defendant William Clyde Lewis guilty of robbery in the first degree and fixed his punishment at fifty years in the custody of the Department of Corrections. The defendant was represented by court-appointed counsel. At the close of the state's case he sought to dismiss his counsel, but at the trial court's request counsel remained available for consultation with the defendant during the remainder of the trial. After verdict the defendant hired his present counsel who prepared and filed a motion for new trial based on the transcript of the record. On appeal the defendant is represented by his retained attorney. The sufficiency of the evidence to support the verdict is not questioned.

There is substantial evidence that the defendant and two companions on December 5, 1967, at about 5:15 p. m., robbed the Nite Owl Grocery in Joplin of about $130 in cash. A witness testified that on the day of the holdup but before it occurred he saw two strange colored men playing pool, one of whom was the defendant. Each man was carrying a small caliber, pearl-handled, automatic pistol in a shoulder holster. A third strange colored man was sitting outside the poolroom in a two-toned Chevrolet automobile. The witness promptly reported this to the police. At the trial the witness identified the defendant as one of the strangers he saw in the poolroom.

When the defendant and his companions went to the grocery store at the time of the robbery, one remained near the front entrance. The defendant purchased a ten-cent confection and when the clerk rang up the sale on the cash register the defendant and his other companion leaned over the counter and covered the two women clerks with pistols. The defendant announced the holdup and compelled the clerk to take all paper money from the cash register and give it to him. A short time after the robbers left, one of the clerks called the police and a description of the three robbers and the automobile in which they were traveling was given to the Missouri Highway Patrol.

In the cash register with the paper money, there was a note that a certain customer owed for a light bulb, a note relating to an application for employment, and a dishonored check for $2.40 which was kept in the drawer as petty cash because the maker was expected to pay the amount in cash and pick up the check. The three robbers were taken into custody by members of the Highway Patrol leaving Joplin on Highway I-44 about twenty minutes after the robbery. A roll of bills approximating the amount stolen was taken from the pocket of the defendant who was driving the automobile. With the bills were the two notes and the dishonored check. The robbers were wearing their shoulder holsters and were armed with the small caliber pistols fully loaded. Defendant's pistol was on the front seat beside him. The defendant was positively identified as one of the three who robbed the store. He was also identified by a Highway Patrol-

man as the one from whom the roll of bills, the incriminating notes and dishonored check were taken at the time of his arrest.

The defendant testified and admitted he and his companions were in the grocery store but denied they committed a robbery. He claimed the Highway Patrolman had put the notes and dishonored check in with his money when he was arrested.

The state rested its case at the end of the first day of trial. The next morning resumption of the trial was delayed about thirty minutes because of a conference between the defendant and his appointed counsel, Mr. Charles D. Tudor. Then Mr. Tudor in the courtroom out of the presence of the jury told the court that the defendant was not "too satisfied with his appointed counsel" and it might be proper for the court to question the defendant and make a record. In substance the defendant stated that he had just learned "about a relationship" between his counsel and the court. The judge later stated in the record that Mr. Tudor was his nephew. The defendant also said that he could not come to an agreement with his counsel about certain procedures relating particularly to the calling of a witness whom he described as a "certain character that could help me". The defendant did not have the name of anyone but stated that he had heard overnight that there was a man apparently in another part of the jail that could help him. When the court refused to postpone the hearing on this uncertain information, the defendant requested that Mr. Tudor be dismissed as his attorney. The court, however, directed Mr. Tudor to remain in the courtroom through the remainder of the trial; he sat at the counsel table and was available for any further legal assistance the defendant would require.

The jury was brought in but when it appeared that the defendant intended to testify the court went into chambers and had the defendant brought in. The conference between the court and the defendant is reported in the transcript. The court explained to the defendant the dangers to which he exposed himself by testifying. The defendant disclosed that he had served time although not in the penitentiary; he stated one of his convictions was for burglary. The defendant further told the court that the witnesses whose names he did not know could give information which would in effect show that there were "two different descriptions" given of defendant's automobile at the time of the robbery. The court pointed out to the defendant that such evidence would not likely have much effect because he had been identified as one of the robbers.

The defendant nevertheless persisted and testified in narrative form without interruption. In brief he admitted that he and his companions bought the guns in Arizona "mostly as a souvenir because this is a new type Italian special 25 automatic", that they were in the pool hall as shown by the state's evidence, that he had gone to the grocery store about midafternoon, that he and his companions were in the store about the time the witnesses said the robbery occurred and they were arrested in his car on the highway. He denied, however, that he took part in any robbery. He commented on the testimony of some of the state's witnesses and undertook to point out discrepancies including conflicting descriptions of the color of the Chevrolet automobile that was involved. Cross-examination by the state added nothing of consequence. The state did not put on any rebuttal witnesses.

The defendant makes five principal contentions on appeal. The most serious of these relates to the propriety of the state's argument to the jury regarding the extent of punishment. The defendant asserts that he was substantially prejudiced and deprived of a fair trial because the prosecuting attorney was permitted to argue as an inducement for a heavy sentence the pos-

sibility of parole and the duties and functions of the parole board.

For obvious reasons the prosecuting attorney spent little time arguing the issue of guilt. Most of his argument was a plea for a long term of imprisonment. He told the jury he had waived the death penalty but called attention to the statutory penalty as an indication of the seriousness of the crime with which the defendant was charged. Six times during his argument the prosecuting attorney exhorted the jury to fix the punishment at a life sentence or fifty years in the penitentiary. There are other references to parole but the defendant complains in particular about this portion of the state's argument:

"Now we have an excellent parole board in this state, and we have excellent parole officers and there is no statutory requirement as to the length of time a man has to serve on his sentence in the State Penitentiary before he can be paroled. A man who is sentenced to fifty years or a man who is sentenced to life, technically and legally can be paroled the same time as a man who is sentenced to three years in the penitentiary. To a great extent whether or not he is paroled depends upon him and his behavior. Now I say this because I feel that it's more important for you people to sentence this man to either life in the penitentiary or fifty years in the penitentiary than to give him a minimum sentence, because let me tell you. Our parole system will take care of him if he's a person who should be released to society. I personally think that it's going to take him a long time to be rehabilitated. He is twenty-six years old. He is not a young kid. He's old enough to know better than to do this and of course, this is exemplified by the fact that they purposely buy guns and shoulder holsters in Arizona, they bought them for the purpose of committing a crime. This is not a crime that occurred on the spur of the moment. They got this far and run out of money, so what do they do, they go down here and stick somebody up, and I think it's important, don't worry about the parole. They'll take care of that in the penitentiary, and the parole board, but it's important that this jury understand the facts of this case and sentence this man to either life in the penitentiary or fifty years or somewhere in between, because I think that is going to tell people and the word will get out, if you do this in Jasper County, this is going to be the result. And I do not think this is an unreasonable sentence under these circumstances."

The defendant says the argument is objectionable because it goes outside the record in commenting on the Missouri statutes and the practices of the parole board. The defendant also complains on the ground that the prosecuting attorney improperly injected his personal opinion in telling the jury it would be a long time before the defendant would be rehabilitated, and in saying that he did not think a sentence of life or fifty years would be unreasonable.

■ The complaint regarding the state's argument is specifically and fully set out in defendant's motion for a new trial. The motion also contains a plea for a reduction in the sentence under S.Ct. Rule 27.04 based largely on the fact that no one was injured and no shots were fired during the robbery, and that the defendant did not offer any resistance when arrested. The plea was denied along with the motion for a new trial. The state asserts that nothing is preserved for review because no objection was made to the argument at the time it was made. Giving weight to the fact that the defendant's appointed counsel was inactive at the time, although due to defendant's fault and bad judgment, and the further fact that the matter was fully presented to the trial court in the motion for new trial, we will in the exercise of our discretion consider the claim as a plain error under S.Ct. Rule 27.20(c), V.A.M.R. Our ruling is also influenced by the fact that by so doing, a later review under Rule

27.26 may be avoided. See Evalt v. United States, 9 Cir., 359 F.2d 534, 545 [22, 23].

In 23A C.J.S. Criminal Law § 1107, at pages 208–209, it is stated generally that: "It is frequently held improper to point out to the jury the possibility of accused's release from imprisonment by parole, probation, pardon, commutation, or similar procedure, as a reason for returning a verdict carrying the death sentence or for imposing a penalty sufficiently great to compensate for such prospective mitigation, or to make such a reference with the purpose and effect of influencing the jurors to shift the burden of their responsibility to some other person or body; but such comments have in other cases been held not improper, if kept within reasonable bounds, and, in many cases, including even some holding them improper, have been held to constitute no grounds for reversal, although there is also authority to the contrary."

In State v. Kaempfer, 342 Mo. 1007, 119 S.W.2d 294, 296 [6], the prosecuting attorney's argument that life imprisonment with a possibility of parole would be about right for the defendant was held to be improper but not grounds for a reversal since the court sustained defendant's objection and advised the jury to disregard the statement which was the relief requested. In State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, 527, 528–529, a reference to the defendant's possible thinking that a new governor or penal board with meager knowledge of the facts would pardon or parole him was part of an inflammatory argument which was held to be grounds for reversal of defendant's conviction. In State v. Johnson, Mo., 267 S.W.2d 642, 645 [5], 44 A.L.R.2d 973, where the defense was insanity, the prosecutor's argument, without reference to a consideration of the evidence, that the defendant would be released from the hospital within two months if found to be not guilty by reason of insanity was held to be reversible error. See also State v. Nickens, Mo., 403 S.W.2d 582, 587 [9].

In State v. Cornett, Mo., 381 S.W.2d 878, 881 [2], this court en banc held it was re-versible error for the trial court to inform the jury that the sentence imposed by its verdict may be diminished by parole or some similar procedure not administered by the judicial branch of government. In that case the defendant's detailed confession was in evidence and the nature and extent of defendant's punishment was perhaps the most important issue in the case. The situation is somewhat the same in the instant case. The rule of the Cornett case applies with equal vigor to a prosecutor's argument.

The purpose and effect of the prosecutor's argument in this case was to influence the jurors to shift the burden of their responsibility to the state board of probation and parole. It is the jury's duty to fix the punishment in accordance with the law declared in the instructions and the evidence in the particular case. The prosecutor's injection of the alien issue was prejudicially erroneous in the circumstances of this case.

The prejudice is augmented by the fact that the prosecutor's manner of speech was such as to give the impression in several instances that he was expressing an opinion not based on the evidence but on information solely within his personal knowledge. An example is the statement: "I personally think that it's going to take him [the defendant] a long time to be rehabilitated." See State v. Leonard, Mo., 182 S.W.2d 548, 551 [5].

The prosecutor made several references to the function of the parole board and repeatedly asked the jury to fix the punishment at life or fifty years imprisonment. The jury responded by assessing the punishment at fifty years. Under all the circumstances it must be held that the jury was unfairly influenced by the improper argument. It is regrettable that the judgment must be reversed and the cause remanded on this ground since the proof of defendant's guilt is strong and convincing.

■ The remaining questions presented by the defendant arise out of his attempt to dismiss his court-appointed attorney and his decision to take no advice except his own. The defendant's action was wholly unjustified and inadvisable. Mr. Tudor did all any attorney could in the face of clear-cut evidence of defendant's guilt, and the court went above and beyond the call of duty in protecting the defendant's rights and in trying to keep him from doing a foolish thing. There is still no showing by defendant's new counsel in the motion for new trial or otherwise that there were any witnesses that could give material testimony on behalf of the defendant. In these circumstances the court did not abuse its discretion in refusing the defendant's request for an adjournment to investigate the rumor. State v. Odom, Mo., 369 S.W.2d 173, 183 [3], cert. den. 375 U.S. 993, 84 S.Ct. 634, 11 L.Ed.2d 479; State v. Miller, Mo., 368 S.W.2d 353, 357 [4, 5]; State v. Jackson, 346 Mo. 474, 142 S.W.2d 45, 51 [15]; 23 C.J.S. Criminal Law § 985, pages 986–987.

We need not consider these matters further since they are not likely to occur again at another trial. They are mentioned, however, because appointed counsel should not be dismissed or changed at the mere whim or caprice of the defendant but only on a showing of good cause. The same is true of a request for a delay or adjournment of the trial. It appears from the transcript that the defendant knew his rights, but that he sought to pervert their intended use and purpose.

For the reasons stated, the judgment is reversed and the cause remanded.

SEILER, P. J., concurs.

HENLEY, Alternate Judge, concurs in result.

HOLMAN, J., not sitting when cause was submitted.