STATE of Missouri, Respondent,

v.

Robert Earl O'NEAL, Jr., Appellant.

No. 62075.

Supreme Court of Missouri,
Division No. Two.

June 8, 1981.

Rehearing Denied July 14, 1981.

---

Robert W. Stillings, Springfield, for appellant.

John Ashcroft, Atty. Gen., Jerry Short, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Robert Earl O'Neal, Jr., appellant herein, was charged with murder in the first degree (a killing in the perpetration of burglary), § 565.003 (all statutory references are to RSMo 1978), and armed criminal action (stealing a firearm, § 570.030.2(3)(d) committed separate and apart from the burglary, by use of a dangerous or deadly weapon) RSMo 571.015, both offenses arising out of an occurrence near Strafford, Missouri, involving appellant and John Boggs.

Appellant does not challenge the sufficiency of the evidence as to either charge. It will be helpful, however, to relate rather briefly the circumstances giving rise to the charges.

On July 6, 1979, appellant and John Boggs entered a trailer-home owned by Ralph Mayberry and took a .22 caliber pistol and a holster. They then went to the nearby trailer-home of Mr. and Mrs. Ralph Sharick intending to burglarize it if there was no one at home. Mr. Sharick was at home, but when they learned that he was alone they threatened him with the pistol obtained from the Mayberry trailer, and took a shotgun and a .22 caliber rifle from him. After appellant disabled an automobile at the Sharick trailer-home he then broke out a window of a nearby house belonging to Dr. Dowell and took a saxaphone and a guitar. While appellant was searching that house for other valuables, John Boggs brought Mr. Sharick to the house. Mr. Sharick was placed in a small closet. According to appellant, Boggs then shot through the closet door three times. One of the wounds so inflicted caused the death of Mr. Sharick.

In his first point appellant asserts the trial court erred in permitting the State to show that appellant and John Boggs had burglarized the trailer-home of Ralph Mayberry and had stolen a pistol therefrom. He asserts that this was "irrelevant to prove any fact in issue and was intended only to show [appellant's] bad character, and thus, that he was guilty of the offenses of which he was charged." He cites and relies only on *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954).

It has repeatedly been stated that reference to other crimes unrelated to the case on trial violates a defendant's right to be tried for the offense with which he is charged unless such proof has some legitimate tendency to establish defendant's guilt of the crime charged. *State v. Reese*, supra; *State v. McRoberts*, 485 S.W.2d 70 (Mo.1972); *State v. Wing*, 455 S.W.2d 457 (Mo.1970); *State v. Hicks*, 591 S.W.2d 184 (Mo.App.1979). In *State v. Wing*, supra,

several exceptions to the general rule are set forth, one of which is that proof which tends to show the commission of a separate crime is admissible if it tends to establish a common scheme or plan embracing two or more crimes so related that proof of one tends to establish the other. It is clear that appellant and Boggs were engaged in a scheme or plan to burglarize several places, and the .22 caliber pistol taken by them in the burglary of the Mayberry trailer-home was the weapon used in the robbery and murder of Mr. Sharick. In *State v. Kerr*, 531 S.W.2d 536, 542 (Mo.App.1975), the defendant was charged with murder by use of a .22 caliber pistol. During the trial the State introduced evidence that the murder weapon had been stolen from the defendant's brother-in-law a short time before the murder. On appeal the defendant contended that proof of the theft "constituted evidence of another crime" and tended to prove no issue in the case. After making reference to the general rule stated above the court held that "proof tending to show that defendant stole the murder weapon from his brother-in-law was legitimate proof of his preparations to commit the crime." See also, *Hess v. United States*, 254 F.2d 585 (8th Cir. 1958), where it was ruled proper to introduce evidence that the shotgun used by defendants in a kidnapping had previously been stolen by them in a robbery. We find no merit to appellant's first point.

During rebuttal testimony by the State, Charles Whitlow, Captain of Detectives for the Sheriff's office of Greene County, testified that he talked to appellant while he was in jail at Enid, Oklahoma, and that before he obtained a tape recorder to use during the questioning, appellant asked him whether John Boggs had made a statement. The following then occurred:

"Q. What did you tell him?

A. I told him yes, that he had.

Q. What did he say in response to that?

A. He said, 'What did he say about the murder?'

Q. What did you tell him?

A. I said he said that you pulled the trigger."

Appellant objected to the last answer, asked the court to instruct the jury to disregard the answer, and asked for a mistrial.

At the time of the occurrence and on this appeal the State proposed to justify this rebuttal testimony on the basis that appellant had opened up the subject by testifying concerning statements made by him to Captain Whitlow concerning Boggs' statement to the police. We need not determine whether this was permissible rebuttal testimony under the circumstances. We shall assume it was not, but we expressly do not so rule. The trial court sustained appellant's objection and instructed the jury as follows:

"Members of the jury, the objection to the last answer is sustained. The court now instructs the jury very strongly not to give any weight to that last answer. You are to totally disregard it and give it no weight and give it no consideration."

■ Every error which might occur in the trial of a case does not necessarily require the granting upon request of a mistrial. *State v. Camper*, 391 S.W.2d 926 (Mo.1965). A declaration of a mistrial is a drastic remedy, *State v. Smith*, 431 S.W.2d 74 (Mo.1968), and the authority of a trial court in this respect "should be exercised only in extraordinary circumstances." *State v. James*, 347 S.W.2d 211, 214 (Mo. 1961). As stated in *State v. Camper*, supra, "a mistrial should be granted only when the incident is so grievous that the prejudicial effect can be removed no other way." See also *State v. James*, supra. The declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court who has observed the incident giving rise to the request for a mistrial, and who is in a better position than an appellate court to evaluate the prejudicial effect, and the possibility of its removal by some action short of a mistrial. *State v. Camper*, supra; *State v. Smith*, supra; *State v. Raspberry*, 452 S.W.2d 169 (Mo.1970). The function of this court in the circumstances is to determine whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial. For the reasons we now set out we rule that it did not.

■ During his testimony appellant had testified that two police officers talked to him, one being Captain Whitlow who read to him parts of a statement previously made by Boggs, and that in doing so he told appellant that "[t]his John [Boggs] is up here * * * selling * * * [you] out * * *." Therefore, the substance of the objected-to statement on rebuttal was what the jury had already been told by appellant. Appellant admitted participation in the burglaries, and that he and John Boggs were engaged in a joint enterprise of robbery and burglary. In such situation it was immaterial, assuming appellant had not withdrawn from the criminal mission and we subsequently rule that he had not, who actually pulled the trigger. In these circumstances it cannot be said as a matter of law that the trial court abused its discretion in not declaring a mistrial instead of sustaining the objection and instructing the jury to disregard the answer of Captain Whitlow.

Appellant next asserts prejudicial error resulted from an incident occurring during oral argument.

Appellant's counsel stated:

"You have a very heavy burden ahead of you and I don't intend to make light of it, because it's a very important decision to make, and it's very important to Robert [appellant] because if you find him guilty he's going to jail for the rest of his life."

During the closing oral argument by the State the prosecutor stated:

"If you find him guilty of murder in the first degree he is sentenced to life, he gets life, not that he will spend the rest of his life in the penitentiary ___."

Appellant interrupted and objected for the reason that "that's contrary to the law as the Court has given it." The objection was overruled. There was no request for a mistrial.

■ Appellant now contends on this appeal that it was error for the State to argue that while the jury might sentence him to life in the penitentiary, he would not actually spend the rest of his life in the peniten-

tiary, and in this way cause the jury to believe that the sentence imposed by their verdict might be diminished by parole or some other procedure. Appellant contends that this argument influenced "the jurors to shift the burden of their responsibility for finding the defendant guilty or innocent."

The only permissible punishment of persons found guilty of murder in the first degree (felony murder) is "imprisonment by the division of corrections during [their] natural [lives]." §§ 565.003 and 565.008 RSMo 1978. Appellant relies primarily on *State v. Lewis*, 443 S.W.2d 186 (Mo.1969). There the defendant was charged with robbery in the first degree, and the permissible punishment varied from imprisonment for five years to life. The improper argument was to the effect that a severe punishment should be imposed, and "[o]ur parole system will take care of him if he's a person who should be released to society." It was held that the purpose and effect of the prosecutor's argument "was to influence the jurors to shift the burden of their responsibility [to determine punishment] to the state board of probation and parole."

We conclude that prejudicial error did not occur in the above circumstances because, first, the comment by the prosecutor was explanatory and retaliatory in nature to the statement previously made by appellant's counsel, and therefore was permissible. *State v. Montgomery*, 592 S.W.2d 284 (Mo. App.1979); *State v. Toney*, 537 S.W.2d 586 (Mo.App.1976). Second, the argument could not have resulted in a shifting of the burden of determining the issue of guilt; it was not directed to that issue. It could not have resulted in a shifting of the burden of fixing punishment because the only permissible punishment was imprisonment for life.

By his fourth point appellant asserts that the trial court erred by failing and refusing to instruct the jury on the defense of abandonment and withdrawal.

Section 562.041 RSMo 1978, sets forth when a person is criminally responsible for the conduct of another, but it also provides that a person is not so responsible if:

"(3) Before the commission of the offense he abandons his purpose and gives timely warning to law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense."

The only source of evidentiary support for an instruction on abandonment is the testimony of appellant. He first related that when Boggs held a pistol on Mr. Sharick he went into the bedroom of the trailerhome and stole a shotgun, and that he then stole a rifle from the garage. Then, after disabling an automobile by pulling out the spark plug wires, he broke into and entered the Dowell house, stole two musical instruments, searched the house for "money or any guns or anything that would be worth anything," and then assisted Boggs in placing Mr. Sharick in the closet. Up to this point in his activities he was aiding and promoting the commission of the offense of burglary. As to the subsequent events appellant testified as follows:

"A. And Johnny said, 'Psst, come here,' and I walked over to him and said, 'Yeah, what do you want?', and he said, 'Well, you know he's seen us, he can identify us, do you want to shoot him?', and I said, 'No,' and I said I didn't want nothin' to do with it—at first I said I wanted to leave and now—I didn't want nothin' to do with it and now he wanted me to kill someone, and I said, 'I don't want nothin' to do with none of it no more, not the burglary or the robbery or the killing or any part of it.'

Q. What did you do at that time?

A. And then Johnny was raisin' the gun and I figured he was getting ready to shoot the old man and I just turned and walked off, thinking maybe that he'd follow and maybe think before killing the old man, but I heard some shots, I think three shots, and I turned back around and Johnny was standing in front of the door with the gun and he opened up the door and the old man kind of slumped down, and there was a BB rifle inside the closet there, I think, and he reached and got that and he started hitting the old man in the head with it, and I said, you know, 'Let's leave, man.'

Q. Robert, why didn't you try to stop him from shooting Mr. Sharick or from hitting Mr. Sharick?

A. There wasn't nothin' I could do. All I could do, you know, is jump in front of the gun. I guess I was scared. I was afraid maybe he might shoot me because I didn't want to go along with none of it."

Appellant made no attempt to give a warning to law enforcement officials of his intent to abandon his purpose of cooperating with Boggs in the burglaries, or in shooting Mr. Sharick. Therefore, if the evidence authorized an instruction on abandonment and withdrawal it would necessarily be that his testimony would have permitted a jury to find that he "otherwise [made] proper effort to prevent the commission of the offense."

At most appellant testified that when Boggs suggested that Mr. Sharick be killed he said he "didn't want nothin' to do with it," and that "now [that] he [Boggs] wanted to kill someone" he did not "want nothin' to do with none of it no more, not the burglary or the robbing or the killing or any of it," but there "wasn't nothin' [he] could do" so he "just turned and walked off, thinking maybe that he'd follow and maybe think before killing the old man."

As stated in 21 Am.Jur.2d Criminal Law § 120, "[a] person who encourages the commission of an unlawful act cannot escape responsibility by quietly withdrawing from the scene," or as stated in § 125 supra, "a mere change of mind will not of itself exonerate the accessory." In an early case, *State v. Forsha*, 190 Mo. 296, 88 S.W. 746, 757 (1905), this Court held that the defendant in that case was not entitled to an instruction on withdrawal and stated:

"We are unwilling to sanction as the law of this state that a defendant can first, by words and actions, put in operation a difficulty, or aid and abet in the commencement of it, and, after having by his course of conduct brought the principal actors into a deadly contest, that he can then flee from the scene of the struggle and thereby relieve himself absolutely from the results of such fatal difficulty."

After leaving the Dowell house appellant and Boggs went to a truckstop on North Glenstone in Springfield, Missouri. Boggs talked to his cousin who was working there and inquired about the possibility of locating someone who would be interested in purchasing a saxaphone and a guitar. Boggs showed the .22 caliber pistol to his cousin and asked if he wanted to buy it. Appellant then said, "[n]o, that [weapon] is not for sale." Dave Wilson, the manager of the truck stop, then in the presence of appellant purchased from Boggs the shotgun and rifle which had been stolen from Mr. Sharick. This indicated that appellant was continuing to cooperate with Boggs in the disposition of the fruits of the burglaries.

■ We are not called upon to declare and we do not purport to say in the circumstances of this case what would constitute "proper effort to prevent the commission of the offense." But we do hold, as a matter of law, that the belated expression of nonapproval of Boggs' proposed action, and then turning and walking away did not constitute the "proper effort" contemplated by § 562.041. The court properly did not give the jury an instruction on abandonment and withdrawal.

Appellant assigns as prejudicial error the giving of Instruction No. 5 which was a modified version of MAI–CR2d 2.12. The modification consisted of deleting Paragraph Fifth, and was as follows:

"As to Count one, if you find and believe from the evidence beyond a reasonable doubt:

"First, that on or about July 6, 1979, a certain person with the aid of the defendant Robert O'Neal committed the offense of burglary in the second degree of the inhabitable structure of Dr. Larry Dowell at Route 3, Strafford, Missouri, and

"Second, that the defendant Robert O'Neal during the commission of the offense of burglary in the second degree, with the purpose of promoting its

commission, aided such other person in committing that offense, and

"Third, on or about July 6, 1979, in the County of Greene, State of Missouri, the defendant Robert O'Neal and another caused the death of Ralph Roscoe Sharick by shooting him, and

"Fourth, that the defendant Robert O'Neal and another did so to prevent detection after committing the burglary at Route 3, Strafford, Missouri, of the inhabitable structure owned by Dr. Larry Dowell, then you will find the defendant guilty under Count one of murder in the first degree.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty under Count one of that offense.

"A person commits the crime of burglary in the second degree when he knowingly enters unlawfully in an inhabitable structure for the purpose of committing a crime therein.

"If you do find the defendant guilty under Count one of murder in first degree, you will fix his punishment at life imprisonment."

Paragraph Fifth contained in MAI–CR2d 2.12 and which was not included in Instruction No. 5 is as follows:

"Fifth, that the defendant knew such other (person was) (persons were) practically certain to (commit) (attempt to commit) (commit or attempt to commit) such additional offense."

Note on Use 6 provides that "[t]he Third, Fourth and Fifth paragraphs must all be included if the defendant is being charged with an offense committed by another person but other than the original offense contemplated by defendant that he and the other person would commit."

Appellant admits that prior to the new criminal code which became effective on January 1, 1979, appellant's conduct would have warranted a conviction for felony murder. See *State v. Handley*, 585 S.W.2d 458 (Mo.1979). But, he asserts, a change in the law pertaining to felony murder resulted from § 562.036 which provides:

"A person with the required culpable mental state is guilty of an offense if it is committed by his own conduct, or by the conduct of another person for which he is criminally responsible, or both."

Appellant contends this section adds an additional element to the offense of felony murder where the State relies on the theory that the defendant is responsible for the conduct of another. He further asserts that this Court has by Paragraph Fifth of MAI–CR2d 2.12 created the means by which the jury is to be informed of this new element.

First degree murder is defined in § 565.003, RSMo 1978, as follows:

"Any person who unlawfully kills another human being without a premeditated intent to cause the death of a particular individual is guilty of the offense of first degree murder if the killing was committed in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary, or kidnapping."

 Under the terms of the statutory language of § 565.003 one can be convicted of first degree murder (felony murder) even though he did not intend to kill someone, unless the death is excusable or justifiable. Therefore, if the actor has the requisite intent to commit or participate in the underlying felony (in this case burglary) no other mental state on his part need be demonstrated because of the strict liability imposed by the felony rule. See *State v. Mullen*, 528 S.W.2d 517 (Mo.App.1975). We conclude that § 563.036 did not add a new and additional element to the offense of felony murder as defined in § 565.003. The correctness of this conclusion is borne out by § 562.026 which states:

"A culpable mental state is not required

\* \* \* \* \* \*

"(2) If the statute defining the offense clearly indicates a purpose to dispense with the requirement of any culpable mental state as to a specific element of the offense."

■ We should also mention that on April 14, 1981 this Court entered an order by which it repealed the present MAI–CR2d 2.12 and adopted a new MAI–CR2d 2.12 with new Notes on Use to become effective January 1, 1982. The new Note on Use 2 provides that "MAI–CR2d 2.12 should not be used in connection with the submission of (1) first degree (felony) murder under Section 565.003 * * *." It is also there provided that "[t]he new MAI–CR2d 2.12 forms do not cover the criminal responsibility of the defendant for some offense committed by another person where that offense was never contemplated by the defendant when he aided or joined with such other person in committing some other offense. See paragraphs Third, Fourth and Fifth of the MAI–CR2d form approved for use on or after January 1, 1979, but now withdrawn. Those paragraphs are not being used in the present MAI–CR2d 2.12. This will permit our courts to decide (1) the extent, if any, of the defendant's responsibility for the other crime under the 1979 Criminal Code, and (2) the proper form of any instruction submitting such an offense if the defendant is criminally responsible for it under the facts and the law." We conclude that the law pertaining to felony murder was not changed by § 562.036, and that Paragraph Fifth of MAI–CR2d 2.12 should be deleted when the instruction is used to submit first degree murder.

Appellant, for his sixth point, challenges Instruction No. 8 which submitted armed criminal action in that appellant and Boggs, through the use, assistance, or aid of a dangerous instrument or deadly weapon, committed the felony of stealing firearms, a Class C felony, § 570.030. He contends the instruction was erroneous because it "failed to instruct the jury as required by Paragraph Five of MAI–CR2d 2.12" and that by not being so instructed the jury was permitted to find appellant guilty of the offense of armed criminal action without the required culpable mental state.

Note on Use 6 to MAI–CR2d 2.12 provides that the Fifth paragraph "must" be included "if the defendant is being charged with an offense committed by another person but other than the original offense contemplated by defendant that he and the other person would commit."

Appellant testified in his own behalf, and according to his testimony the facts concerning the commission of the felony of stealing was as follows: Appellant and Boggs drove to the trailer-home, and after learning that Mr. Sharick was there alone, Boggs "pulled out the pistol and said, 'Don't move, old man,' and he [Boggs] got out of the car and [appellant] got out on the passenger side and [Boggs] asked him if he had any money or any valuables or anything in the house * * *." "[Boggs and appellant] went on inside the trailer and he [Sharick] said, 'Well, I've got a shotgun back there in the closet in one of the bedrooms." Appellant then went to the bedroom and obtained the shotgun. Appellant then testified, "[f]rom there we went back outside, and he [Mr. Sharick] said he had a rifle in the garage and then we went to the garage and got that rifle."

■ It thus appears from the testimony of appellant that in appellant's presence Boggs used the pistol, a deadly weapon within the meaning of § 571.015, to threaten Mr. Sharick and by its use enable appellant thereafter to commit the acts of stealing as submitted in Instruction No. 8. In view of this appellant is not entitled to contend that the offense of armed criminal action was not the original offense contemplated by him. For that reason the inclusion in Instruction No. 8 of Paragraph Fifth from MAI–CR2d 2.12 was not necessary.

For his last point appellant asserts the trial court erred in giving Instruction No. 12, which substantially is in the form of MAI–CR2d 2.10, because it failed to instruct the jury, as required by MAI–CR2d 2.10.2 that "a person is also criminally responsible for any other offense which he knew that such other person was practically certain to commit in the course and furtherance of the particular offense initially contemplated," when in this case the jury could have found that appellant was not practically certain that Boggs would commit the

additional offenses of armed criminal action and murder. What we have previously said in reference to appellant's challenge to Instructions 5 and 8 rules this contention, and it is without merit.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by Stockard, C., is adopted as the opinion of the court.

All of the Judges concur.