Robert E. O'NEAL, Jr., Appellant,

v.

STATE of Missouri, Respondent.

No. 14752.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 3, 1987.

Motion for Rehearing or Transfer
Denied Feb. 20, 1987.

Jon Van Arkel, Asst. Public Defender, Judicial Circuit 31, Springfield, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Robert E. O'Neal, Jr., ("movant") appeals from a judgment denying relief in a proceeding brought by him under Rule 27.-26, Missouri Rules of Criminal Procedure (12th ed. 1981). In that proceeding, movant sought an order vacating his conviction, per jury trial, of murder in the first degree and armed criminal action, for which he was sentenced to life imprisonment and 15 years' imprisonment, respectively, the sentences to run consecutively. The conviction was affirmed on direct appeal. *State v. O'Neal,* 618 S.W.2d 31 (Mo.1981).

In the instant proceeding, the circuit court (henceforth referred to as "the motion court"), with movant appearing in person and by counsel, conducted an evidentia-

ry hearing, after which the motion court made findings of fact and conclusions of law on all issues presented. Movant briefs three assignments of error, which we shall consider seriatim, mindful that our review is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Neal v. State*, 669 S.W.2d 254, 259[7] (Mo.App.1984); *Charles v. State*, 612 S.W.2d 409, 411–12[3] (Mo.App.1981).

Movant's first point asserts the motion court erred in failing to find that movant was "improperly extradited" from Oklahoma, in that he was a "juvenile" and was "not afforded legal counsel when pressured into waiving extradition."

The crimes of which movant was convicted were committed in Greene County, Missouri. Movant, however, was arrested in Oklahoma. At the 27.26 hearing, movant testified that several days after his arrest, he was taken before a judge and asked whether he wanted to sign "extradition papers." According to movant, he said no. Movant's testimony continued:

"They took me back over the jail, pumped me a little bit, told me about how it'd be better on me in long run if I sign extradition papers.

After a little discussion with'em I went ahead and signed extradition papers.

I asked'em to give me a lawyer, but told me I couldn't have no lawyer.

Q. How old where you?

A. I's seventeen at the time.

Q. And, you did ask for a lawyer?

A. Yeah.

. . . .

Q. Did they tell you you were entitled to a hearing on extradition?

A. Nope."

Movant maintains that under Oklahoma law, he was a "juvenile," as one does not become an adult in Oklahoma until age 18.[1] Movant complains that he "was not brought before juvenile authorities and was not afforded an attorney or informed

of his rights prior to waiving extradition." He does not, however, explain why such circumstances, if true, would invalidate his conviction.

The motion court found it unnecessary to determine whether there was a flaw in the extradition, noting the established rule that once an accused has been brought within the custody of the demanding state, the legality of the extradition is no longer a proper subject of any legal attack by him. *Huffman v. State*, 487 S.W.2d 549, 553 (Mo.1972).

■ In *Huffman*, the accused, age 16, pleaded guilty to murder in the first degree, and was sentenced to life imprisonment. Seeking to vacate the conviction through a proceeding under Rule 27.26, the accused averred, among other things, that he was improperly extradited from Louisiana. Answering that contention, the Supreme Court stated that even if the accused could have proved he had been abducted from Louisiana to stand trial in Missouri, as opposed to proper extradition proceedings or waiver of same, such would not be a ground for relief. *Id.* at 553[1]. In so holding, the Supreme Court of Missouri followed the rule established by *Ker v. Illinois*, 119 U.S. 436, 440, 7 S.Ct. 225, 227, 30 L.Ed. 421, 423 (1886), and *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511–12, 96 L.Ed. 541, 545 (1952). *Huffman*, is squarely in point, and refutes movant's first assignment of error. Furthermore, in a proceeding under Rule 27.26, a Missouri court does not inquire into the validity of extradition proceedings under which an accused has been returned to this jurisdiction. *Watson v. State*, 475 S.W.2d 8, 12[3] (Mo.1972); *State v. Estes*, 406 S.W.2d 560, 562[2] (Mo.1966); *State v. Donnell*, 387 S.W.2d 508, 510[2] (Mo.1965). Movant's first point is denied.

In his second point, movant insists that the attorney who represented him at the jury trial (henceforth referred to as "defense counsel") was ineffective in failing to

1. In Missouri, at the time the crimes occurred and movant was returned from Oklahoma, the juvenile court had exclusive original jurisdiction over children under 17 years of age who were alleged to have violated a state law. §§ 211.021(2) and 211.031.1(2), RSMo 1978. That remains true today. §§ 211.021(2) and 211.031.1(3), RSMo 1986.

request a mental examination of movant prior to trial.

At the 27.26 hearing, movant testified he had a "mental evaluation" at the "Ozark Mental Health Center" two years before his arrest. The reason, said movant, was that he "was very wild and radical in school," and his principal thought he had some type of behavior disorder. In movant's words, "[T]hey'd kicked me out of school and they'd said that I was dangerous to the other students and teachers unless I'd go and have some sort of psychiatric help they wouldn't allow me to be in school there the next morning." Movant's testimony continued:

"Q. Did you discuss with [defense counsel] the possibility of having a mental exam?

A. Yeah. I did.

Q. And, what was his response?

A. His response was he didn't think it was necessary.

Q. Was he aware that you had been in the, in this program?

A. Yes. I told him myself several times."

Movant's mother, also a witness at the 27.26 hearing, confirmed that movant, at the request of his school principal, had received a mental evaluation "when he was in junior high school." Movant's mother believed she had told defense counsel about it, but she "wouldn't actually swear to it." She was certain, however, that on more than one occasion prior to trial, she had asked defense counsel to obtain a mental evaluation of movant.

An aunt of movant's testified at the 27.26 hearing that she had been present when a request was made of defense counsel (inferably by movant's mother) regarding a mental examination for movant.

Defense counsel, called as a witness by movant at the 27.26 hearing, remembered talking to movant's school principal, but learned nothing "that would have helped." Defense counsel testified he had no reason to believe movant was incompetent to stand trial, as movant "was totally, one hundred per cent, able to assist me in his defense and to talk to me about what had happened

in Oklahoma." Defense counsel confirmed that he had talked to movant's mother and aunt, but added, "[T]here was never any indication at all of insanity or diminished capacity of any nature." Defense counsel had no recollection of movant or any of movant's relatives ever mentioning the possibility of a mental disease or defect.

The motion court, at the request of movant, took "notice" of the written request filed by defense counsel for payment for his services (defense counsel was court appointed). That document contained notations that on a date some four and a half months prior to trial, defense counsel had talked by phone with movant's grandmother and movant's mother regarding movant's "mental capacity." Those conversations took place a few days after defense counsel was appointed to represent movant, and after he had conferred with movant only once.

The motion court's findings of fact included these:

"The testimony offered by Movant, [movant's mother] and [movant's aunt] that they made a request of [defense counsel] to order a mental examination is not found credible by this Court. Furthermore, Movant failed to demonstrate any prejudice from the alleged failure to order a mental examination. Movant offers no allegations in his various motions nor offered any evidence at the evidentiary hearing showing that a mental examination would have helped him. No evidence was presented showing that a mental exam would have revealed that Movant was suffering from a mental disease or defect at the time of the crime or was incompetent to assist trial counsel."

In a proceeding under Rule 27.26, the weight of the evidence and the credibility of the witnesses are matters for the trial court. *Shoemake v. State*, 462 S.W.2d 772, 775[2] (Mo. banc 1971); *Gallimore v. State*, 660 S.W.2d 458, 459[2] (Mo.App.1983). Consequently, in the instant case the motion court had the prerogative to disbelieve—as it did—the testimony of movant, his mother, and his aunt that they had

requested defense counsel to ask for a mental examination of movant. Movant's second point is thus reduced to whether the motion court was clearly erroneous in finding that defense counsel was not ineffective in failing to request a mental examination for movant when no one had asked defense counsel to do so.

■ In order to prevail on a claim of ineffective assistance of counsel, a prisoner in a 27.26 proceeding must show that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances, and that the prisoner was prejudiced thereby. *Seales v. State*, 580 S.W.2d 733, 735–37[3] (Mo. banc 1979).

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), decided after *Seales*, the Supreme Court of the United States held that the proper standard for attorney performance in a criminal case is that of reasonably effective assistance, and that when a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687–88, 104 S.Ct. at 2064–65[6], 80 L.Ed.2d at 693[11]. However, added the Court, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment if the error had no effect on the judgment. 466 U.S. at 691, 104 S.Ct. at 2067[15], 80 L.Ed.2d at 696[20]. Thus, said the Court, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 466 U.S. at 694, 104 S.Ct. at 2068[19], 80 L.Ed.2d at 698[25].

In *State v. Chandler*, 698 S.W.2d 844, 848 n. 10 (Mo. banc 1985), decided after *Strickland*, the Supreme Court of Missouri discerned no significant difference between the test in *Seales* and the test in *Strickland*. Accordingly, we shall gauge defense counsel's effectiveness by the criteria set forth in *Seales* and *Strickland*.

Defense counsel, as noted earlier, testified at the 27.26 hearing that there was never any indication that movant had any type of mental disorder.

The State, as part of its evidence at the 27.26 hearing, directed the motion court's attention to the transcript of movant's testimony at the jury trial wherein movant gave his account of his activities during the days preceding the two crimes, his activities during the crimes themselves, his activities afterward, and his questioning in Oklahoma by Missouri authorities. We have carefully studied that testimony, and have found it clear, sharply detailed, and free of any hint of mental infirmity.

Movant's testimony at the 27.26 hearing, which fills 14 pages of that transcript, is of similar character. In that testimony, movant described with particularity (a) his questioning by Missouri authorities in Oklahoma, which resulted in a tape-recorded statement, (b) the circumstances under which he signed, in Oklahoma, a written consent to return to Missouri, (c) certain frustration he experienced with defense counsel when it appeared to movant that counsel was reluctant to visit movant at the jail or phone him, (d) movant's discussion with defense counsel about the defense of "withdrawal," (e) his inquiries of defense counsel about obtaining a change of venue, and sundry other subjects. The comprehensiveness of that testimony belies the existence of any mental disorder.

Furthermore, we cannot ignore the fact that movant, at the 27.26 hearing, did not testify as to the *result* of the mental evaluation he received at the insistence of his school principal, nor did he produce a written report thereof or explain his failure to do so.

■ When, in a proceeding under Rule 27.26, a prisoner challenges his attorney's failure to move for a mental examination, the prisoner must show the existence of a factual basis indicating his mental condition was questionable, which should have caused the attorney to initiate an independent investigation of the prisoner's mental state. *Ginnery v. State*, 645 S.W.2d 202,

203[2] (Mo.App.1983); *Simpson v. State,* 603 S.W.2d 9, 10–11[2] (Mo.App.1980). In the absence of some suggestion of mental instability, there is no duty on counsel to initiate an investigation of the mental condition of an accused. *Dorsey v. State,* 586 S.W.2d 810, 811[4] (Mo.App.1979); *Jones v. State,* 564 S.W.2d 933, 935[4] (Mo.App. 1978).

■ Here, defense counsel, at the outset of his representation of movant, discussed movant's mental capacity with his mother and grandmother, and also contacted the school principal. According to defense counsel, nothing in his investigation or in his conferences with movant supplied any indication that movant had any mental abnormality. As there was nothing to have caused defense counsel to request a court-ordered mental examination of movant, we hold that defense counsel, in not seeking one, did not fail to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances, nor did defense counsel's representation of movant fall below the standard of reasonably effective assistance. Moreover, as the motion court correctly observed, there was nothing in the evidence at the 27.26 hearing to suggest that a mental examination would have revealed any mental disease or defect. Movant's second point is without merit.

■ Movant's third, and final, assignment of error maintains the motion court erred in rejecting movant's contention that the conviction should be vacated because of an "improper comment" by the prosecutor during closing argument. The comment was:

> "If you find him guilty of murder in the first degree he is sentenced to life, he gets life, not that he will spend the rest of his life in the penitentiary—."

The identical issue was raised on direct appeal, and decided adversely to movant. 618 S.W.2d at 35–36. The Supreme Court held the comment was not prejudicially erroneous because it was explanatory and retaliatory in nature to an argument previously made by defense counsel, it could not have resulted in a shifting of the burden of determining the issue of guilt, and it could not have resulted in a shifting of the burden of fixing punishment because the only permissible punishment was imprisonment for life. *Id.*

Movant, at least tacitly, acknowledges that where an issue is raised and decided on direct appeal, a prisoner cannot obtain another review in a proceeding under Rule 27.26. *Mooring v. State,* 501 S.W.2d 7, 11[7] (Mo.1973); *Seltzer v. State,* 694 S.W.2d 778, 780[3] (Mo.App.1985). Movant argues, however, that *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), decided since movant's direct appeal, condemns the prosecutor's argument.

We disagree. The issue in *Caldwell,* as stated in the first paragraph of that opinion, was whether a capital sentence is valid when the sentencing jury is led to believe that responsibility for determining the appropriateness of a death sentence rests not with the jury but with the appellate court which later reviews the case. 472 U.S. at 323, 105 S.Ct. at 2636, 86 L.Ed.2d at 235–36. As observed by the Supreme Court of Missouri in movant's direct appeal, the prosecutor's argument could not have resulted in shifting the burden of fixing punishment, as the only permissible punishment was imprisonment for life. 618 S.W.2d at 36.

Movant's third point is denied, and the judgment is affirmed.

GREENE, P.J., and FLANIGAN, J., concur.